JAMES HOUGHTON *v.* E. K. CARPENTER, *Appellant.*

*Sale. Contract. Evidence. Bill of Sale. Warranty. Damages.*

The rule that parol evidence is inadmissible to vary or add to a written contract, applies to a bill of sale, provided it contains the necessary elements of a contract of sale.

The paper in question was as follows:

"STAMFORD, January 10th, 1860.
ELIAS K. CARPENTER,—BILL OF BUTTER.

| 72 1-2 | lbs., | a |
| * | * | * | " |

603     lbs. Gross, tare each 11 lbs., making.
Received payment for the above butter, as weighed at Weld's Store.
ELIAS K. CARPENTER."

*Held,* that this paper had no legal force or import as a contract, and was unmeaning without parol evidence to give it application, and that such evidence was admissible to prove a sale and warranty.

The referee, after detailing what was said by the parties, found upon the subject of warranty, " that the language employed by the parties while negotiating respecting the said butter, imported that the said butter should be of the best quality, and first class for table use; that both parties so understood it, and intended it to make a part of the contract as to the quality of the butter." *Held,* that the referee intended by this language that there was a warranty.

Where goods are bought on inspection with warranty as to quality, and do not answer the warranty, the purchaser is not bound to return them, and his neglect to do so, does not bar his recovery for the breach. Generally he has no right to return the property in such case, unless there is fraud in the sale on the part of the seller.

Where goods are not bought on inspection, but the sale is executory, and they do not answer the contract, the buyer may return them; and if he neglects to do so, but keeps the goods, and appropriates them to his own use, it is often held that the objection to the quality is thereby waived.

The rule of damages in breach of warranty is, the difference between the actual value of the property at the time of the sale, and what its value would have been had it been as warranted to be; but where there is no evidence as to the latter value, except what may have been inferred from the price stipulated in the sale, that price may be taken as what its value would have been had it been as warranted.

ACTION on the case to recover on a breach of warranty in the purchase of a quantity of butter. The case was referred to a referee, who reported that the purchase was made on the 10th of January, 1860. * * * *

" That the plaintiff told the defendant that he, (the plaintiff,) had some sons engaged in the grocery business in Boston, who had written to him that if he could send them some " tip-top number one table butter," for sale to families, to send it on, and they could sell it for a good price, but not to send any other than good butter. The defendant then said that his was good butter, and asked the plaintiff to go to Weld's store and examine the butter, and both parties went to said Weld's store together, but the plaintiff made no examination of the butter, and returned to his on store. The defendant followed, and asked the plaintiff if he would buy the butter? The plaintiff

replied, that if his butter was such as the plaintiff's sons had written for, he would buy it.  *   *   *   *

"The plaintiff several times repeated, in the hearing of the defendant, that the butter was to be "tip-top number one table butter; that he was buying it to send to his sons in Boston." To which the defendant replied, "yes, and that the butter would suit the plaintiff's sons." And, relying upon the aforesaid representations of the defendant, the plaintiff agreed to purchase the butter of the defendant, and to pay him therefor twenty cents a pound, by his note, payable at three months from date. And it was understood that the plaintiff should send the butter to Boston within a reasonable time. The parties then and there agreed upon the tare at eleven pounds to each tub; making eighty-eight pounds, which, deducted from the gross weight, left five hundred and fifteen pounds as the net weight of the butter; and for that quantity of butter, at twenty cents a pound, the plaintiff then and there executed and delivered his note to the defendant for one hundred and three dollars, payable three months from its date. And the plaintiff, on that occasion, and as part of the transaction, wrote upon the face of the "bill of butter," all the words thereon between the word "gross," and the signature, and the defandant signed the same, and then and there delivered it, so signed, to the plaintiff.

"The defendant seasonably objected to the admission of parol evidence, or any evidence other than said "bill of butter," to show the contract between the parties; but, intending to decide, according to law, and to have my decision revised by the court, I overruled the defendant's said objection, and received parol evidence from both parties, and their respective witnesses, as to what passed between the parties relative to the quality and sale of said butter.

"The plaintiff kept said butter in the back room of his store, a safe and proper place for that purpose, until the 3d day of February, 1860, when he transmitted the same to the plaintiff's sons in Boston, by whom it was received on the 7th day of February, 1860, in an inferior condition as to its quality; and after repeated efforts to sell it, at the price of good butter, it was finally, long after, sold at a very reduced price.

Houghton *v.* Carpenter, Apt.

" I find that the language employed by the parties while negotiating respecting the said butter, imported that the said butter should be of the best quality, and first-class for table use ; that both parties so understood it, and intended it to make a part of the contract as to the quality of the butter. And as a conclusion of law, that said language amounted to a warranty that the said butter was of such quality ; in arriving at which conclusion I intend to decide according to law.

" I find that said butter was not, at the time of the said sale and delivery thereof by the defendant to the plaintiff, of so good quality as said warranty required, and that the said butter was not worth to the plaintiff, at the time when he so received it, what he paid for it, by the sum of fifty-one dollars and fifty cents ; and that he should recover of the defendant, if anything, said last named sum, with the interest thereon, from the 10th day of April, 1860, to the 10th day of December, 1867, being twenty-three dollars and sixty-nine cents, making in all seventy-five dollars and nineteen cents. * * * *

" The plaintiff paid said note to the defendant's assignee thereof, after its maturity, and before this suit. * * * *

" The plaintiff had an opportunity to examine the butter in Weld's store, but did not. After the delivery of the butter at the plaintiff's store, the lid of one of the tubs was taken off by the defendant, and the plaintiff lifted the cloth that was over the butter in that tub, but did not examine the butter.

" The defects in the butter might have been detected on such an examination as the plaintiff had an opportunity to make, but they were of such a nature as to require more than ordinary skill to discover them. * * * *

" Within three days after the purchase of said butter by the plaintiff, he was informed by his wife and her mother, who had, at his request, examined the butter, that they thought he would have trouble with the butter. And that in March, next after, the plaintiff was informed by letters from his sons in Boston, that the butter was poor. And the plaintiff did not inform the defendant that the butter was poor until the next May, and after it had been sold."

" STAMFORD, January 10th, 1860.

ELIAS K. CARPENTER,—BILL OF BUTTER.

| 72½ lbs., | a | " |
|---|---|---|
| 76½ " | " |
| 75½ " | " |
| 79 " | " |
| 74½ " | " |
| 70 " | " |
| 76 " | " |
| 79 " | " |

603 lbs.  Gross, tare each 11 lbs., making.

Received payment for the above butter, as weighed at Weld's Store.

ELIAS K. CARPENTER.

[On back.]  This butter I have tested, and find it to be very good."

The defendant filed the following exceptions, among others, to the report :

" 1st.  That it was not competent for the referee to admit parol evidence to prove the contract between the parties, the same having been reduced to writing, as shown by the paper denominated the " bill of butter."

" 2d.  That said " bill of butter " is a bill of sale of the butter, executed and delivered at the time between the parties, and is conclusive as to the contract, and not subject to be explained by parol evidence.

\*       \*       \*       \*       \*       \*       \*       \*

" 4th.  That from the facts found by the referee, he was not justified in finding a warranty as to the quality of the butter.

" 5th.  That from the facts found and reported by the referee, the plaintiff is not entitled to recover."

The county court, at the December Term, 1867, PROUT, J., presiding, rendered judgment for the plaintiff on said report, for the sum named therein,—to which decision the defendant excepted.

*Wm. H. Follett, A. B. Gardner* and *A. W. Preston,* for the defendant.

*C. N. Davenport,* for the plaintiff.

The opinion of the court was delivered by

PECK, J. The plaintiff claims to recover for a breach of warranty as to the quality of a quantity of butter sold by the defendant to the plaintiff. The facts found by the referee exclude the idea of any fraud in the sale, and no claim is made on any such ground. The sale, warranty and breach are indispensable to the plaintiff's right of action.

It is insisted on the part of the defence that the referee erred in receiving parol evidence to prove the contract of sale and warranty. This question the referee refers to the court. The ground of the objection urged, is that the "*bill of butter*," as it is called, introduced by the plaintiff, is such a written contract as excludes the parol evidence. It is conceded by the plaintiff's counsel that the principle that parol evidence is inadmissible to vary or alter a written contract, or to add to it further stipulations, is applicable to bills of sale executed in the common and usual form of such instruments. For the purposes of this question, the particular form of a bill of sale is not material if it contains the substantial elements of a contract. If the bill of sale, memorandum, receipt or whatever it may be called, in this case, possesses the necessary elements of a contract of sale, the parol evidence was inadmissible; otherwise it was properly received. The paper or memorandum in question is this: At the top of the paper is written, " Stamford, January 10th, 1860. Elias K. Carpenter, bill of butter." Under this is a column of figures, 72½ lbs., 76½ lbs. &c. Under these figures is the footing 603 lbs.; opposite which are written the words, " gross, tare each 11 lbs." under which is written, " received payment for the above butter as weighed at Weld's store," and signed, " Elias K. Carpenter." The question is whether this is such a written contract of sale of a quantity of butter from the defendant to the plaintiff as to exclude parol evidence of such sale with warranty as to quality. To constitute a sale there must be a *buyer*, a *seller* and a *thing sold*, and words importing a transfer of the title of the thing from the seller to the buyer. To constitute a perfect written contract of sale all this must appear upon the instrument. The price is also usually specified; but for the purpose of the question in this case, that per-

haps is not essential to be specified in the writing. There is enough on this memorandum to show that the figures represent butter and its weight. But there is the name of no person upon the paper except that of the defendant as above stated. The memorandum not having upon it the name of the plaintiff or any name but that of the defendant, if it is a written contract of sale, it is a sale without a purchaser. Not does it contain any words importing a transfer of title. Nor is there any thing on the paper that necessarily shows that the name of the defendant represents him in the character of a seller; much less a seller in a contract in which the plaintiff is a buyer. The name of the defendant at the top of the instrument may as well be taken to indicate that he is a buyer as a seller; but it imports neither. The words at the bottom, " *received payment for the above butter*," do not necessarily import a sale; much less a sale to the plaintiff. The whole instrument is no more consistent with a sale to the plaintiff than it is with the idea that the plaintiff and the defendant owned the butter in common, and had sold it to some third person, and that the defendant had received payment; and this memorandum taken with a view to evidence in a future adjustment of the receipts of each, between these parties. It does not state *of whom* the defendant received payment. The paper therefore does not of itself prove a sale from the defendant to the plaintiff. It neither shows that the plaintiff bought the butter or that the defendant sold it. It was mere *data* or *memoranda* of weight of butter, and evidence that the defendant had received payment from some one not named; and is of no legal force or import as a contract and was unmeaning until the parol contract was proved to give it application. The plaintiff having a right to prove such sale by parol, was at liberty to prove the warranty.

The next objection insisted upon by the defendant's counsel is, that the conversation between the parties, found by the referee, does not amount to a warranty; the counsel is right in the position that in order to amount to a warranty, it must have been so understood by the parties at the time of the sale; and unless the referee has substantially so found as matter of fact, the report shows no warranty This point is not free from difficulty, the plaintiff having bought the

Houghton *v.* Carpenter, Apt.

butter on inspection, and none of the statements or representations necessarily importing a warranty. The referee has not *in terms* found as matter of fact that there was a warranty. The referee after detailing what was said by the parties in negotiating the trade, says, " I find that the language employed by the parties while negotiating respecting the said butter, imported that the said butter should be of the best quality and first class for table use ; that both parties so understood it, and intended it to make a part of the contract as to the quality of the butter. And as a conclusion of law that said language amounted to a warranty that the said butter was of such quality ; in arriving at such conclusion I intend to decide according to law." In all this the referee has not said *in terms* that the parties mutually intended a warranty, nor that it was mutually understood by the parties in the language used, at the time of the trade, that if the butter was not of the quality represented by the defendant, he would stand responsible to make it good according to his representation ; but as the referee reports what was said and finds that the language used imported that the said butter *should be* of the best quality and first class for table use, that both parties so understood it and intended it to make a part of the contract as to the quality of the butter, we are inclined to hold that he intended by it a warranty, that is, that if the butter was not of that quality, the defendant was to make it good, as represented.

It is again insisted that it was the duty of the plaintiff, when he discovered that the butter did not answer the warranty, to notify the defendant and return the butter within a reasonable time, and that his neglect to do so is a bar to his recovery. But when property is bought on inspection with warranty as to quality, we do not understand any such duty is imposed on the purchaser in order to entitle him to an action for breach of warranty. Nor has the purchaser generally a right in such case to return the property ; although he has such right if there is fraud in the sale on the part of the seller. Where property is not bought on inspection, but the sale is executory, the seller contracting to furnish goods of a particular quality, and forwards them, and they do not answer the contract, the buyer may return them ; and if he neglects to do so, but keeps

the goods and appropriates them to his own use, it is often held that the objection to the quality is thereby waived.   But that rule is not applicable to a sale like this, a purchase made on inspection of the specific property at the time of the sale.   The error in the defendant's position arises from confounding the two classes of cases which are entirely distinct.

It is also objected that the referee adopted a wrong rule of damages.   The rule adopted by the referee was in effect the difference between the price paid and the actual value of the butter at the time the plaintiff purchased it of the defendant.   The rule of damages in such cases is, as claimed by the counsel of the defendant, the difference between the actual value of the property at the time of the sale, and what its value would have been had it been as warranted to be. But where there is no evidence as to the value of the property as warranted, except what may be inferred from the price stipulated in the sale, that price may be taken as what its value would have been had it been as warranted.   As there was no evidence in this case as to the value of the butter as warranted to be, except the price stipulated in the contract, it is to be taken that the price paid was the value of such butter as this was warranted to be ; so that the rule of damages adopted by the referee is, as applicable to this case, the same in effect as that for which the defendant's counsel contends.   The difference is only in the form of stating the rule, the result being the same.

Judgment affirmed.