A. CROSBY KENNETT AND HERBERT MUDGETT v. GEORGE A.

TUDOR AND ERNEST TUDOR.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 16, 1911.

*Evidence—Admissions of Counsel—Construction—Parol Evidence*
*Modifying Bill of Sale—Fraud in Sale—Proof of Contract—*
*Pleading—General Issue—Measure of Damages in Fraud*
*Action—Nominal Damages—Judgment for Nominal Damages*
*in Supreme Court—Remand—Proceedings in Lower Court—*
*Amendment of Pleadings—Application for Leave—Judgment*
*Reversed only as to Damages.*

In an action for deceit in selling plaintiffs certain personal property and
concealing the existence of two mortgages thereon, on the strength
of which mortgages one plaintiff had been sued in trover in New Hamp-
shire, the cross-question, asked that plaintiff, whether he intended to
contest the trover suit on the ground that the mortgages were invalid,
was properly excluded, on the concession by plaintiffs' counsel that
the mortgages were valid in New Hampshire, for that concession
was equivalent to an admission that plaintiff did not intend to contest
the trover suit on the gound of the invalidity of the mortgages, and
bound plaintiffs as much as the excluded answer could.

In an action for deceit in selling plaintiffs, by a bill of sale, certain personal
property, including a mill and machinery, and concealing the existence
of two mortgages thereon, defendants for the expressed purpose of re-
butting plaintiffs' evidence that they were decieved, offered to show that
a certain sum paid defendants at the time of the sale was paid for work
done for plaintiffs, and that by the contract of sale the mill building
and machinery were to be turned over to plaintiffs, and that certain
machinery purchased by one of defendants, and not paid for, was to be
paid for by plaintiffs, or with money furnished by them, which matter
was not settled on the day of the sale, and that certain of the machinery
sold was to be paid for at what it was worth more than the two mortgages
thereon, which was left undetermined because the amount of the mort-
gages was not then known. *Held*, that the offered evidence was prop-

erly excluded, as going beyond negativing the deceit, and tending to impeach the bill of sale.

In an action for deceit in the sale of property, though the contract of sale be but matter of inducement, it is necessary to prove it in order to show a relation between the parties that would make the deceit actionable.

Under the general issue in an action on the case anything is admissible in evidence which shows that defendant is not guilty of actionable wrong in respect of the matters charged in the declaration, and so, in an action for deceit in the sale of property, the general issue denies all the facts stated in the inducement, as well as the deceit itself.

In an action for deceit in selling plaintiffs certain personal property and concealing the existence of two mortgages thereon, plaintiffs were entitled only to nominal damages where it appeared that they had not paid the mortgages, though on the strength thereof a suit in trover had been brought against one of the plaintiffs, *Bowman* v. *Parker*, 40 Vt. 410; *Houghton* v. *Carpenter*, 40 Vt. 588; and *Shanks* v. *Whitney*, 66 Vt. 367, distinguished.

In an action for deceit in selling plaintiffs certain personal property and concealing the existence of two mortgages thereon, where the only error below was the rendition of judgment for plaintiffs for actual damages, whereas they were entitled only to nominal damages because they had not paid the mortgages, the general practice would require this Court to render judgment for plaintiffs for nominal damages, all of the issues having been disposed of below, but, as such judgment would bar a recovery by plaintiffs for what they may subsequently have to pay to free their property from the mortgages, the judgment below is affirmed, except as to damages, but reversed as to that, and cause remanded, so that plaintiffs may apply below for leave to amend, on terms to be there determined, by alleging payment of the mortgages when made.

Such an amendment may properly be allowed, as it would neither change the form or nature of the action, nor introduce a new subject-matter.

CASE for deceit in the sale of personal property. Plea, the general issue. Trial by jury at the September Term, 1910. Windham County, *Taylor*, J., presiding. Verdict and judgment for the plaintiffs, who live in New Hampshire, while the defendants live in Vermont. The defendants excepted.

In December, 1900, defendant George A. Tudor gave a mortgage to one Gibson on certain personal property that he owned. In April, 1904, he gave a mortgage to one Ware on certain other of his personal property. In January, 1903, he gave a lien note to the Lane Manufacturing Company on certain of his property. In November, 1907, he moved all of said

property to Albany, N. Y., and went there with his son, the other defendant, where they both engaged to do certain work for plaintiffs under a written contract, and where both remained until February, 1908, when they returned to Vermont, leasing said property in the mill in Albany that they had been operating on the plaintiff's land. In December, 1907, the Lane Company's lien note was transferred to plaintiff Kennett, who still holds the same. In January, 1909, the Gibson mortgage and the Ware mortgage were assigned to one Daley, who still holds the same. On February 13, 1908, defendants bought over $8,000 worth of machinery etc. of plaintiffs and gave them a mortgage thereof, which mortgage also included all of the property covered by the Gibson and the Ware mortgage and the Lane Company's lien. On December 4, 1908, defendants sold and delivered all of said property to plaintiffs, and gave them a bill of sale thereof. The validity of said mortgages and lien note was not questioned by either party, and plaintiffs conceded that the two mortgages held by Daley were valid incumbrances on the property covered by them, both in Vermont and New Hampshire. It appeared that Daley, by virtue of his said mortgages, went to New Hampshire and tendered to Kennett the full amount due on the Lane Company's lien, and demanded of him the possession of all the property described in said mortgages for the purpose of foreclosing them, which tender Kennett refused, and refused to deliver the property, though he did not question the tender. Thereupon, on February 6, 1909, Daley sued Kennett in trover in New Hampshire for the property, and that suit is still pending.

The property sued for is sufficient in value to pay both of said mortgages and said lien.

On cross-examination of Kennett he was asked whether he intended to contest Daley's suit against him on the ground that said mortgages are invalid. Plaintiffs' counsel said they did not claim that, but were willing to concede their validity. Defendant's counsel said they ought not to be bound by any concession the plaintiffs' counsel might make; that it was material to show whether plaintiffs claimed in this case that said mortgages were valid here, and seek to recover the value of them, and at the same time intend to defend the trover suit on the ground that they are not valid. Plaintiff's counsel then con-

ceded that said mortgages are valid in New Hampshire, and constitute a valid incumbrance on the property that was taken from Vermont to New Hampshire.   The court said the concession was ample, and excluded the question.

The plaintiffs' evidence tended to show that on December 4, 1908, when they bought the property of the defendants and took their bill of sale thereof, they made a final settlement with defendants and passed receipts, and bought all of the property covered by the bill of sale, but were deceived and cheated by defendants because part of the property was subject to the Gibson and the Ware mortgages, of which defendants did not inform them.

As tending to rebut plaintiffs' claim that they were thus deceived and cheated, defendants offered to show by defendant Ernest Tudor, (who had testified that $300 were paid to the defendants at the time of the sale to plaintiffs,) what that money was paid for.   On objection by plaintiffs, defendants offered to show by the witness that it was paid for work they had done for plaintiffs; that the arrangement was that plaintiffs were to have the mill and machinery, a schedule of which was attached to the back of the mortgage of February 13, and that the mill building was to be turned over to plaintiffs; that the machinery that the defendant George had bought on his own credit, and which was not paid for, was to be paid for by plaintiffs themselves, or they were to pay George for it so he could pay; that that was not settled that day because they did not have the bills there; that it was left that day under that arrangement; that the machinery that was brought from Vermont was to be paid for at what it was worth more than the Gibson and the Ware mortgages, but that it was left unsettled because they did not know the amount of those mortgages; that they came home to Vermont, and Daley was sent to New Hampshire by the holders of those mortgages, and when he came back he had the bill of sale.   This offer was objected to as undertaking to impeach the bill of sale and as immaterial and irrelevant.   The court ruled that under the pleadings defendants could not go back of the bill of sale to open up the trade, which was evidenced by the writings.   The witness was then asked to state fully the arrangement and agreement between the parties in regard

to the machinery and the payment for it. This was objected to, and the court said it had already ruled that the parties had made a contract in writing, and had stated the rule as to contracts, and excluded the question. The contract referred to in these rulings was the bill of sale. The defendants were permitted to testify fully to conversations covering the Gibson and the Ware mortgages, and were not denied the privilege of showing conversations tending to impute to the plaintiffs knowledge of the existence of those mortgages at the time the bill of sale was given.

The plaintiffs have neither paid nor offered to pay said mortgages nor any part thereof; and so the defendants requested the court to charge that they could recover only nominal damages.

The court refused thus to charge, but charged instead that in the circumstances and under the concessions in the case, the general damages would be the amount of said mortgages, and the jury found accordingly.

The defendants excepted to the rulings adverse to them.

*Chase & Daley* for the defendants.

It was error to refuse defendant's requested instruction that plaintiffs could recover only nominal damages, as they had neither paid nor offered to pay the mortgages in question. 4 Kent 476; *McKindley* v. *Drew*, 69 Vt. 210; *Hedden* v. *Griffin*, 136 Mass. 229; *Brunnell et ux* v. *Carr et ux.*, 76 Vt. 174; *Springer* v. *Crowell*, 103 Mass. 65; *Briggs* v. *Morse*, 42 Conn. 258; *Davis* v. *Lyman*, 6 Conn. 254; *Prescott* v. *Truman*, 4 Mass. 631; *Richardson* v. *Dorr*, 5 Vt. 9; *Potter* v. *Taylor*, 6 Vt. 676; *Newcomb* v. *Wallace*, 112 Mass. 25; *Thompson* v. *Hill*, 38 Vt. 85; *Andrew* v. *Davidson*, 17 N. H. 413; *Mitchell* v. *Warner*, 5 Conn. 497; *Norman* v. *Wells*, 17 Wend. 136; *Randall* v. *Hazelton et al.*, 94 Mass. 412.

*Herbert G. Barber* and *Frank E. Barber* for the plaintiffs.

ROWELL, C. J. The plaintiffs' concession that the Gibson and the Ware mortgages are valid in New Hampshire and constitute valid incumbrances there on the property that was

taken from Vermont, was equivalent to a concession that Kennett did not intend to contest the trover suit on the ground that they are invalid.   This being so, the concession  bound the plaintiffs in this case as much as Kennett's answer to the like effect would have bound them, and so the defendants got what they asked for, namely, Kennett's intention in respect of that ground of defence.

No copy of the second count is furnished us.   All we know about it is, as stated in the exceptions, that it alleges fraud and deceit in the sale of December 4, 1908.   Nor have we a copy of the bill of sale, but we assume that it has the necessary elements of a contract of sale, for it was so treated below.   Taken thus, the court was right in excluding the testimony of Ernest Tudor, for it would have gone beyond the purpose for which it was offered, namely, to rebut the plaintiffs' claim that they were deceived and cheated as alleged, and have tended to impeach the contract itself for non-consummation, which was not within the purpose for which the testimony was offered, which purpose is the same as the claim here made for its admissibility. And though the contract may be but matter of inducement, yet proof of it was essential in order to show a relation between the parties that would make the deceit actionable.   *Slack* v. *Bragg,* 83 Vt. 404, 411.

The plaintiffs also contend that the ruling was right because the plea of not gulity operates as a denial only of the deceit alleged, and not of the facts stated in the inducement.   This is so under Reg. Gen. Hil., 4 Wm. IV, to which they refer, but not so at the common law, where, in case anything is admissible under the general issue that shows that the defendant is not guilty of anything actionable in respect of the matter charged in the declaration.   *Jerome* v. *Smith,* 48 Vt. 230; and it does not appear that that scope of the issue was restricted here to the injury of the defendants, for they were permitted to testify fully to conversations covering the Gibson and the Ware mortgages, and were not denied the privilege of showing conversations tending to impute to the plaintiffs knowledge of the existence of said mortgages at the time the bill of sale was given.

As to damages.   The defendants claim that it was error to refuse their request to limit them to a nominal sum.   The

plaintiffs claim that the full amount of the mortgages was the proper measure, in support of which they rely upon three Vermont cases, namely, *Bowman* v. *Parker*, 40 Vt. 41; *Houghton* v. *Carpenter*, 40 Vt. 588; and *Shanks* v. *Whitney*, 66 Vt. 405. But none of them are in point. *Bowman* v. *Parker* was case for fraudulent representations in the sale of certain shares of the capital stock of the Vermont Marble Company. The Court said that the general rule of damages in actions of that character is the difference between the value of the property as it really was at the time of the sale, and what its value would have been had the representation for which the seller is found liable been true. The case does not show what the representations were, but the opinion says they were representations affecting the value of the stock, by which is evidently meant the intrinsic value. Here the representations did not affect the intrinsic value of the property.

*Houghton* v. *Carpenter*, was case for breach of warranty in the sale of butter. The rule of damages was said to be the difference between the value of the butter at the time of sale, and what its value would have been had it been as warranted. There the butter was not as warranted, but was much inferior in quality; and there the warranty went to the intrinsic quality of the article sold.

*Shanks* v. *Whitney* was case for deceit in the exchange of real estate. The defendant's property was subject to a large mortgage that was about to mature. The plaintiff fully informed them that if he made the exchange and the mortgage could not be replaced, he should be obliged to let the property go on it, as he was not able to raise the money to pay it. They assured him that it could be replaced, and that they then had a man who would do it, and that they would turn that opportunity over to him. A street and a sidewalk ran over the property, and they told the plaintiff that the circumstances were such that the municipality was legally bound and ready to pay therefor. All of these representations were false to the knowledge of the defendants, but the exchange was made on the faith of them, after which the plaintiff made diligent effort to replace the mortgage, but could not, and the defendants did not, nor would, try to help him, nor give him the name of any one who

would, and so he was forced to and did let the property go on the mortgage. The court applied much the same rule there as the court applied here; but there the rule was adapted to the case, for the plaintiff had suffered all the damage he recovered, while here the plaintiffs have suffered no actual damage, and may never suffer any, for the defendants may pay the mortgage debts, or Daley may enforce them against the mortgagor personally and let the security go free.

Indeed there is no difference between this case in respect of damages and cases on covenants against incumbrances, which are broken, if ever, when the covenant is made, and give rise to a claim for nominal damages, but to no more unless more have been sustained. It is not enough that here the plaintiffs conceded the validity of the mortgages, and virtually conceded that Kennett does not intend to defend the trover suit on the ground of their invalidity, for that did not pay those debts, nor discharge the mortgagor therefrom, nor preclude Daley from collecting them of him by a personal judgment thereon, nor debar Kennett from defending Daley's suit on the ground of the invalidity of the mortgages. The court erred therefore, in not confining the plaintiffs to nominal damages as requested.

This being the only error, the general practice would require a final judgment here for nominal damages, no issue to the jury remaining undisposed of. But we do not render such a judgment, as it would bar recovery by the plaintiffs of what they may have to pay to free their property from the mortgages; for the deceit is the cause of action, and would merge in such a judgment and thereby become extinguished as a further cause of action, for it is not a continuing wrong divisible in point of time, and so a fresh wrong as often as fresh damage arises from it, but a terminated wrong not thus divisible, and consequently not capable of being demerged and made again to serve as ground for recovering fresh damage.

Thus, in *Admr. of Whitney* v. *Clarendon*, 18 Vt. 252, it is held that recovery in an action of trespass on the case by a father for loss of service of his minor son because of personal injuries occasioned by the fall of a bridge that the defendant was bound to maintain and keep in repair,—was a bar to a second

action for like damage sustained by reason of the same injury, though recovery in the first action was limited to damage sustained prior to its commencement and the second action was brought expressly for such loss after the first action was commenced. The Court said that to maintain a second action for fresh damage when there is no new injury, would be novel in principle and not warranted by authority.

So in *Morey* v. *King*, 57 Vt. 383, the question was whether a party who had failed to recover all the damage he had sustained by a single breach of a contract because he did not properln declare for a portion of them in a former suit, could maintaiy a second suit to recover what he did not recover in the first suit; and it was held that he could not. The Court said that the general doctrine that a party cannot divide up an entire claim and maintain separate actions for each part, whether the claim arises from contract or tort, is well settled and elementary.

So in *Bullard* v. *Thorpe*, 66 Vt. 599, 606, it is said that if a demand is split up, and a judgment recovered for a part, the legal proposition that a judgment for a part of an entire demand is a conclusive bar to any other suit for another part of the same demand is everywhere inflexibly maintained.

In the case at bar the actual damages lurk in the fact that the property is incumbered by mortgages that the plaintiffs will have to pay, and they should have paid them in season to recover therefor in this action; but by omitting to do so they split their damages into nominal and actual, and thereby made a case against themselves for barring the latter if they have the former, and this they do not want to do, but want the judgment reversed as to damages, and the cause remanded with liberty to amend by alleging payment of the mortgages when made so that recovery therefor may be had in this action; but if such liberty is not granted, they ask leave to become non-suit, for they agree, though the defendants do not, that a judgment for nominal damages will bar actual damages. So the question is whether it is allowable thus to bring in the question of actual damages at this stage of the case, and we think it is on the strength of *Potter* v. *Taylor*, 6 Vt. 676, as well as on general principles. That case was an action for the breach of a covenant against incumbrances. After the writ was issued but before it.

was served, the plaintiff paid the incumbrance and was allowed
to recover the amount in damages. The Court said that the
cause of action had accrued when the suit was commenced,
and that though the plaintiff would be entitled to nominal
damages only but for the actual payment of the incumbrance,
yet that that payment was not the ground of action but only
the consequence of it, and was a loss necessarily resulting from
the breach of covenant that constituted the cause of action,
and therefore was properly included in the damages recovered.
It is true that there the incumbrance was paid before the writ
was served, but such payment did not go to the perfection of
the right of action, but only to the enhancement of the damages,
and the Court evidently did not regard the case as affected
by the holdings that it is sometimes enough if the right of action
is perfected before the service of the writ. So we see no dis-
tinction in principle between that case and this, though this is
tort and that was contract.

In *Haskins* v. *Ferris*, 23 Vt. 673, which was trover, the
plaintiff was allowed to amend by declaring for other property
taken at the same time, on the ground that the taking was the
cause of action, and that it might be presumed that he intended
to sue for the whole cause of action in the first place. But
here, that the plaintiffs intended to sue for their whole damage
in the first place is more than a presumption, it is a fact, for they
went for the whole on trial and got it.

In *Boyd* v. *Bartlett*, 36 Vt. 9, the original declaration counted
on a covenant against incumbrances. A new count was al-
lowed on a covenant of warranty in the same deed, it being
held not to introduce a new cause of action. The Court said
that in practice amendments are allowed more liberally than
formerly; that the matter of allowing them is, to a great extent,
a question of fact, depending on the purpose and intent of the
plaintiff in bringing the suit and framing the declaration.

Indeed this Court said long ago that an amendment to a
declaration may be made if it does not change the form nor the
nature of the action nor introduce a new subject-matter. *Skin-
ner* v. *Grant*, 12 Vt. 456. Here the amendment asked for would
do none of those things, and consequently we think it allowable.
But the plaintiffs should apply below for the leave asked, as

was directed in *Allen* v. *Parkhurst*, 10 Vt. 557, 562. If that court grants the leave, it will fix the terms, as to which we say nothing. Judgment will be reversed only as to damages. *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489, 505; *Austin* v. *Langlois*, 83 Vt. 104.

*Judgment affirmed except as to damages, but reversed as to those, and cause remanded.*