[Civ. No. 1949.   Third Appellate District.—January 23, 1919.]

## YUBA MANUFACTURING COMPANY (a Corporation), Respondent, v. EDWARD STONE, Appellant.

CONTRACT—SALE OF TRACTOR—WARRANTY—EVIDENCE.—In this action on a promissory note given as part of the purchase price of a tractor, sold under a written contract, in which the only warranty was that the tractor, when delivered, would be "in good working order and free from any latent defect arising from poor workmanship," parol evidence was inadmissible to prove representations by an agent of the plaintiff as to the capacity of the machine in the matter of driving threshers, the offer of such evidence being an attempt to add an additional warranty to that expressed in the written contract.

ID.—EXPRESS WARRANTY DEFINED.—An express warranty means simply an undertaking or covenant that the thing which is the subject of the contract is or is not of a certain quality or capacity.

ID.—FRAUDULENT REPRESENTATION AS WARRANTY.—A representation or assurance as to the capacity of a machine was not changed in its

significance as a warranty by reason of the fact that it was claimed
to have been fraudulently given.

ID.—WRITTEN AGREEMENTS—PRESUMPTION.—Where the parties have re-
duced their agreement to writing, they are conclusively presumed to
have exhibited therein all the covenants and conditions as to the
quality and capacity of the thing sold which are binding on the
vendor, and no additional warranty can be ingrafted on, or added
to, one that is written.

ID.—FRAUD VITIATING CONTRACT.—Although neither party is precluded
from showing fraud that might vitiate their apparent contract, the
fraud must relate to and be connected with the agreement which is
the basis of the action.

EQUITY—GENERAL VERDICT OF JURY.—In an equity case a general ver-
dict rendered by a jury is not determinative of the pleaded issues,
and a failure to find upon said issues is error requiring reversal of
the judgment.

TRIAL—LEGAL ISSUES—SPECIAL FINDINGS UNNECESSARY.—In this ac-
tion, allegations in a so-called cross-complaint of fraudulent repre-
sentations were immaterial; but it stated a defense by alleging that
it was not true as warranted in the written contract that the tractor
"was in good working order and free from latent defects arising
from poor workmanship or the use of improper and defective mate-
rials." The only material issues were, therefore, of legal cognizance
and there was no necessity for specific findings by the court.

APPEAL from a judgment of the Superior Court of Butte
County. H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chas A. Wetmore, Jr., and M. T. Brittan for Appellant.

W. H. Carlin for Respondent.

BURNETT, J.—The action was brought to recover the sum
of $2,244.10 upon a promissory note and book account, the
complaint being in two counts.

The pleadings in the case show that plaintiff sold to defend-
ant a tractor, known as a Yuba "Ball Tread," on or about the
twelfth day of March, 1915, for the total sum of $3,055, and
that the tractor was purchased under a written contract,
which is set forth in defendant's answer and cross-complaint.

The promissory note sued upon was one of several notes
given in payment of the purchase price of the tractor, and the

book account was for supplies furnished for said tractor and labor performed thereon by the plaintiff. The answer and cross-complaint of defendant admits the execution of the notes but attempts to set up a defense and cause of action against plaintiff, first, for breach of the warranty contained in said contract, and, secondly, for rescission of the contract and for damages on account of fraudulent representations made by plaintiff to defendant for the purpose of inducing, and which did induce, him to purchase said tractor.

The cause was tried before a jury and a verdict rendered in favor of plaintiff for the sum of $2,070, and the appeal is taken from the judgment on a bill of exceptions.

The transcript does not purport to show the entire evidence, but the record is sufficient to present the points relied upon by appellant for a reversal.

The contentions of appellant are: First, that the court erred in refusing to allow defendant to introduce evidence of the oral representations made to him by plaintiff and its agents, and, second, that "the judgment is erroneous because it was based upon a general verdict of the jury without findings." As to the supposed erroneous ruling, the transcript shows that the defendant, after stating that he had a conversation with one Fred Johnson, an agent of plaintiff, was asked this question: "When he came over to your home, what conversation did you have with Mr. Johnson with reference to the purchase of this tractor?" To this question an objection was made on the general ground and, also, "It does not tend to prove any issues involved in this action, and it is a manifest beginning of an attempt to contradict, change and vary the terms of a written instrument." After some discussion, the question was withdrawn and this question was asked: "Prior to the execution of this contract, which is on March 12, 1915, did the Yuba Construction Company, now known as the Yuba Manufacturing Company, or any of its agents—I will have to make it leading now I guess—make any representations to you of any kind as to what the capacity of the machine—that is, the tractor, which they were attempting to sell you, would be, or what it could do in the matter of driving rice threshers?" It was objected to as "irrelevant, incompetent and immaterial and tending to alter and vary the terms of a written instrument, to wit, the contract as finally executed and set forth in the pleadings in this action." The objection was sustained by

the court, and this ruling is the cause of the principal complaint of appellant.

The written contract, as appears from the pleadings, was executed on the twelfth day of March, 1915, and provided for the sale and delivery by the respondent to appellant, of "one Model 18 Yuba Ball Tread Tractor, with canopy and Prest-O-Lite." It further appears that appellant should pay for said tractor the sum of $3,055, in installments, which were to be evidenced by promissory notes, except the first payment, which was made at the time of the execution of the agreement. It was, also, provided that the property in said tractor should remain in plaintiff until the whole amount should have been paid by defendant, and that the defendant should have the right to hold and use the said tractor so long as there was no default in the payment of any of the moneys evidenced by said promissory notes.

Paragraph 5 of said written agreement provides as follows: "The party of the first part warrants that the said tractor when delivered will be in good working order and free from any latent defect arising from poor workmanship or the use of improper or defective materials, and agrees to correct any defects due to poor workmanship or defective materials which may develop under normal and proper use within one year from the date of delivery." This, it may be said, is the only statement in said contract and the only warranty in reference to quality, capacity, or efficiency of said tractor, and it is the contention of respondent that by offering said parol evidence of previous conversations between appellant and the agent of respondent an attempt was thereby made to add an additional warranty to that expressed in said written instrument, and that by virtue of the provisions of the code, and, also, of the decisions of the court, such parol evidence is inadmissible. It is not disputed by appellant that an additional warranty cannot be shown to that contained in the written contract, but, it is contended that the offer constituted an effort to prove fraud which operated as an inducement to the execution of said agreement, and which, if shown, would avoid the whole contract and relieve the appellant from the apparent liability on said promissory notes.

It cannot be disputed, though, that the statement claimed to have been made by respondent's agent was in reference to the capacity of said machine. It amounted to nothing more

nor less than an assurance or guaranty that the tractor would do a certain amount of work. If effect were given to the declaration of the agent, respondent would be required to furnish a tractor of a certain specific and definite capacity.

An "express warranty" means simply an undertaking or covenant that the thing which is the subject of the contract is or is not of a certain quality or capacity. It is difficult, therefore, to resist the conclusion that appellant sought to add to the warranty contained in said written instrument. Of course, the significance of the said parol assurance was not changed by reason of the fact that it is claimed to have been fraudulently given. Whether the promise was made with or without a deceitful intent, its importance to appellant arose from the consideration that it related to the character of the tractor which was to be furnished. Its quality as a warranty would not be changed or affected in the least by alleging that the representation was fraudulently made.

The rule as to warranties seems to be well settled that, where the parties have reduced their agreement of sale to writing, they are conclusively presumed to have exhibited therein all the covenants and conditions as to the quality and capacity of the thing sold, which are binding upon the vendor.

The principle that governs is stated in Benjamin on Sales, seventh edition, page 666, as follows: "If the article is sold by a formal contract, or a regular bill of sale, which is silent on the subject of warranty no oral warranty made at the same time, or even previously, can be shown, since the writing is conclusively supposed to embody the whole contract. For the same reason, no additional warranty can be engrafted on, or added to, one that is written."

In *United Iron Works* v. *Outer H. etc. Co.,* 168 Cal. 81, [141 Pac. 917], the action was brought to recover the purchase price of a dredge constructed by the plaintiff for defendant in pursuance of the terms of a written contract calling for its construction in accordance with the accompanying plans and specifications, and it was held that parol evidence of the surrounding circumstances was not admissible under section 1647 of the Civil Code or section 1860 of the Code of Civil Procedure to show the warranty by the plaintiff, not expressly embodied in the written contract, that the dredge would be capable of doing certain specified work. It was, furthermore, held, "that where the parties have reduced to writing what

purports to be a complete and certain agreement, importing
a legal obligation, it will, in the absence of fraud, accident or
mistake, be conclusively presumed that the writing contains
the whole of the agreement between the parties, and parol
evidence of prior, contemporaneous or subsequent conversa-
tions, representations, or statements will not be received for
the purpose of adding to or varying the written instrument.
If, therefore, such a writing exists between the parties, and
it contains no warranty at all, no warranty can be added by
parol; if it contains a warranty of some kind or to some extent,
parol evidence will not be admitted to extend, enlarge, or
modify that which the writing specifies.''

In *Tockstein* v. *Pacific Kissel Kar Branch,* 33 Cal. App. 262,
[164 Pac. 906], it is held: ''A person buying or agreeing to
buy personal property, the terms of which purchase or agree-
ment to purchase are put in writing, is bound as to the terms
of the contract by such writing, into which all preliminary
understandings and assurances are presumed to be merged,
and such person cannot go behind such writing to avoid the
agreement of purchase for the alleged breach of some oral
understanding or guaranty not contained in its written
terms.''

It is true that in the Tockstein case the written agreement
contained upon its face the statement ''that only the written
representations, agreements, and guarantees contained within
its terms shall be binding upon'' the vendor, but such recital
added nothing to the effect of the written instrument.    The
written instrument herein, apparently complete in itself, neces-
sarily implies that it contains all the covenants of the parties.

In the Tockstein case, *supra,* the plaintiff asserted ''that
the inducing cause for her agreement to purchase the car in
question was the representation of the salesman of the defend-
ant that the car which would be delivered to her would be a
new and perfect car and that it was guaranteed perfect in
every way and that she would have no trouble with it.''    But,
for the reason already stated, she was not permitted to show
that this representation was made.

It must be apparent that the same rule applies whether the
said oral representations be regarded as technically a ''war-
ranty'' or as simply a covenant or promise.    In either event
it must be entirely excluded because not contained in the
final written agreement of the parties.    For further discus-

sion of the principle we may refer to the carefully considered case of *Peterson* v. *Chaix,* 5 Cal. App. 525, [90 Pac. 948].

Manifestly, this consideration does not preclude either party from showing fraud that might vitiate the apparent contract of the parties. The fraud, however, must relate to and be connected with the agreement which is the basis of the action. Herein, as we have seen, the supposed fraudulent representation is entirely disconnected from the actual contract of the parties and cannot be considered a material element, since it was entirely ignored and superseded by the written instrument. If appellant had made a similar allegation as to any of the facts recited in said instrument, or had shown by proper averment that his signature to the contract was obtained fraudulently, or that he was deceived as to the contents, or that it did not contain the full intent of the parties, a different situation would, of course, be presented. The cases cited by appellant in this connection are distinguishable from the one before us.

*Newman* v. *Smith,* 77 Cal. 22, [18 Pac. 791], does state the rule to be that ''Fraudulent representations as to a material matter, by which a party was induced to enter into a contract to his damage, is ground for an action at law or relief in equity notwithstanding that the contract was in writing and the representation was verbal.'' However, that case involved the sale of real property and it appeared that the fraudulent representations affected the terms of the written instrument, particularly in reference to the value of the property. In other words, by reason of the fraud of the vendee the written instrument did not fully express the intent of the parties.

In *Barron Estate Co.* v. *Woodruff Co.,* 163 Cal. 561, [42 L. R. A. (N. S.) 125, 126 Pac. 351], several questions of fraud were involved, all directly connected with the written contract of the parties. The principal elements upon which appellant relied, however, for damages, related to the capacity of the architect and the false representation in reference to the cost of the building. These were matters not comprehended and concluded by the written instrument, and it must be apparent that they stand upon a different footing from oral representations as to the quality of a machine, where the parties have thereafter agreed in writing as to what it shall be.

The principal questions involved in *Macdonald* v. *De-Fremery,* 168 Cal. 189, [142 Pac. 73], were whether a false

statement in order to sustain an action of deceit must be the *sole* or might be only *one* inducement for the purchase of bank stock, and whether the purchaser was justified in relying upon the representations of the directors as to the value of the stock.

In *Teague* v. *Hall,* 171 Cal. 668, [154 Pac. 851], no question arose as to adding to or varying the terms of a written contract, but the court rightly held that the action for deceit would lie for false representations as to the number of budded nursery trees made by the vendor.

In *Brandt* v. *Krogh,* 14 Cal. App. 39, [111 Pac. 275], the agreement for the sale of corporate stock was in parol and the fraudulent representations were in reference to the value of said stock.

Manifestly the court, as far as possible, should protect an innocent party against the fraud of one seeking to take an unconscionable advantage, but in this class of cases, when the parties have deliberately reduced their contract to writing, and have undertaken to set forth the character of the contrivance which is sold, and there is no mistake or fraud connected with the execution of said instrument, it is reasonable and in accordance with the law to hold that the contract shall not be avoided by reason of some false representation as to the quality of the machine, which representation the vendee has seen fit to completely ignore in the written instrument. It is true, of course, that a defrauded party cannot by the simple "device of a written instrument" be deprived of the right to prove the fraud, but it is equally true that he cannot be permitted to nullify the rule in relation to written instruments by the specious claim that he was deceived by certain oral representations.

As to the other point, it is undoubtedly the rule, as claimed by appellant, that "in an equity case a general verdict rendered by the jury is not determinative of the pleaded issues and a failure to find upon said issues is error requiring reversal of the judgment." (*Learned* v. *Castle,* 67 Cal. 41, [7 Pac. 34]; *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 558, [147 Pac. 238]; *Holland* v. *Kelly,* 177 Cal. 43, [169 Pac. 1000].)

However, if we are correct in the foregoing views, the allegation as to the fraudulent misrepresentation was immaterial. The so-called cross-complaint failed to state a cause of action

for affirmative relief. It did state a defense to plaintiff's complaint, for the reason that it alleged that it was not true, as warranted in the written contract, that said tractor "was in good working order and free from latent defects arising from poor workmanship or the use of improper and defective materials."

As we view it, the only material issues were, therefore, of legal cognizance and there was no necessity for specific findings by the court.

We find no error in the record and the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.