### OXNARD THEATRES, Inc., v. PARAMOUNT PICTURES, Inc., et al.

No. 8189.

District Court, S. D. California, Central Division.

July 11, 1938.

Neblett, Warner & MacDonald, of Los Angeles, Cal., for plaintiff.

O'Melveny, Tuller & Myers, of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

This is one of a series of actions, the original complaint in which was the subject of a prior opinion. Blake v. Paramount Pictures, Inc., D.C.Cal.1938, 22 F. Supp. 249. To a first amended complaint the plaintiff confessed a demurrer. By agreement of counsel, the second amended complaint was filed in this cause only with the understanding that a ruling on it would be determinative of all. The cause of action grounded upon the California Anti-Trust Law, known as the Cartwright Act (Stats.Calif.1907, p. 984, amended Stats. 1909, p. 593), has been abandoned. The only cause of action the complaint now states is one in fraud.

The plaintiff is the owner of a theater at Oxnard, California. We shall refer to him as "the exhibitor". The defendants are producers and distributors of motion pictures. We shall refer to them as "the distributor." The fraud charged consists, in substance, as did the first cause of action in the original complaint, of an allegation that in inducing the plaintiff to enter into a yearly licensing agreement for the season of 1936–1937 the defendants represented that certain designated pictures, ("Souls at Sea, with Gary Cooper, George Raft; "Artists and Models" with Jack Benny, Ida Lupino; Richard Arlen, Gail Patrick; "High, Wide and Handsome" with Irene Dunne and Randolph Scott; "Angel", with Marlene Dietrich, directed by Ernst Lubitsch; "Spawn of the North," with Carole Lombard, Cary Grant, Randolph Scott—Directed by Henry Hathaway, who did "Lives of a Bengal Lancer" and "Trail of the Lonesome Pine"; "The Count of Luxembourg" with Irene Dunne, John Boles, W. C. Fields, and Frank Forrest. Frank Lehar's world-famous operetta with the original glorious Lehar music; "The Barrier" with Jimmy Ellison, Jean Parker, Randolph Scott, Frances Drake, Bob Burns, George Bancroft; one additional motion picture starring Marlene

Dietrich; one additional motion picture starring Claudette Colbert; one motion picture starring Harold Lloyd; one additional motion picture starring Gary Cooper) would be produced and released during the season. Plaintiff claims that it relied upon this promise in executing the contract and would not have done so had it not believed it. However, it charges that the defendants and their agents made the promise without intention to perform (Calif. Civil Code, Sec. 1710, subdiv. 4). Instead, they withheld these pictures. The patrons of the theater had been led through advertisements to expect them, and through the failure of the defendants to release them, the exhibitor was unable to exhibit them. The reputation and good-will of the plaintiff's theater among its patrons suffered thereby and it was compelled to obtain and exhibit in its theater motion pictures which were of less interest to its patrons and from which it derived no profit. Damage in the sum of five thousand dollars is asked.

The defendants have challenged the sufficiency of the complaint. The contract is made a part of the complaint. The challenge turns upon the meaning of what I called in the prior opinion "the substitution clauses." The first two paragraphs of the clause (the first of which only was set forth in the prior opinion) read (page 252):

"Description of Pictures—Twentieth: (a) The Distributor shall have and hereby reserves the right in the sole discretion of the Distributor to change the title of any of said motion pictures, to make changes in, alterations and adaptation of any story, book or play and to substitute for any thereof any other story, book or play. The Distributor also shall have and hereby reserves the right to change the director, the cast or any member thereof of any of said motion pictures."

"(b) The Exhibitor shall not be required to accept for any feature motion picture described in the Schedule as that of a named star or stars, director or named well-known author, book or play, any motion picture of any other star or stars, director, author, book or play nor to accept any other feature motion picture in place of any thereof which in the Schedule is designated 'no substitute'. The right of rejection conferred on the Exhibitor by this Clause is in addition to the

right of exclusion provided in Clause Fourteenth hereof."

These clauses relate to the very matter of the fraudulent promises alleged to have been made. The two cannot co-exist. The contract as written provides specifically that while the agreement is made with relation to certain motion pictures, contingencies might arise which might cause the distributor to substitute other motion pictures for the motion pictures promised. So the distributor reserves the right to make substitution.

These substitutions the exhibitor must accept. When the right to substitution is not reserved, the motion pictures are designated "no substitute". It is as clear as can be that by their agreement the parties divided the motion pictures which were the subject of the contract, into two groups. As to one group, the producer-distributor retained the right of substitution. Once the right is exercised, the exhibitor had to accept the substituted motion picture. The other group was one as to which the right of substitution was *not* reserved. As to these, the exhibitor was not bound to accept the substituted pictures, but had the right to reject them.

One can readily surmise the motive behind such an agreement. The period of the contract is one year. The difficulties attending motion picture production, the personal elements which can enter it, the availability of a particular star, or of a particular director at a particular time, the proper atmospheric conditions, the availability of suitable locations, the contingencies arising out of possible disagreement between star and director, or star or director and producer and the like, would call upon the distributor even if he were not, as is evident here, a subsidiary of the producer, to exercise caution, and to protect himself against contingencies which might make it impossible for the producer to produce a particular picture. After a picture is produced, marketing problems might arise. One can see why a producer might hesitate to release a certain picture at a particular time because a specially outstanding production might be occupying the public attention and might warrant withholding release for general distribution of a special feature. But even if we assume, as charged, that the object was mercenary, that the distributor sought to reserve to himself the right to defer public exhibition of cer-

---

tain designated motion pictures in order to obtain higher prices for the same, whatever might be said of the ethics of such procedure, no legal principle stands in the way of exacting such a condition, unless, as plaintiff thinks, it is fraudulent in law.

The inquiry is thus limited to this single proposition: Do the allegations of the Complaint amount to actionable fraud?

The rights of the parties, being a matter of substantive law, the question propounded must be determined by the law of California as interpreted by its highest courts. 28 U.S.C.A. § 725; Erie R. Co. v. Tompkins, 1938, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ruhlin v. New York Life Ins. Co., 1938, 58 S.Ct. 860, 82 L.Ed. 1290.

The cases cited in the previous opinion show that in California promises relating to matters as to which the contract is silent may amount to actionable fraud if made without intention to perform. This was the situation in the cases upon which the plaintiff relies in support of the present complaint. Illustrative of them is Ferguson v. Koch, 1928, 204 Cal. 342, 268 P. 342, 58 A.L.R. 1176. There, the parties had entered into a written contract for the purchase of a used truck. The court allowed proof of fraudulent representations as to the make of the truck, its carrying capacity, the type of the motor, and the like,—all matters as to which the contract was *entirely silent*. Rightly. For, as the court said: "Parol evidence is always admissible to prove fraud, and it was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud. Hence, the fact that the sale of an automobile is evidenced by a written contract will not prevent the purchaser from proving by parol evidence that the sale was induced by fraud." Ferguson v. Koch, supra, at page 344, 268 P. at page 345.

However, when the subject of the alleged representation is covered by the agreement in a manner different from that alleged, a party to the agreement cannot avoid the rule which makes the written agreement the unimpeachable memorial of the understanding between the parties and claim the benefit of a contradictory undertaking by averring that it was a promise made without intention to perform, and, therefore, fraudulent. The cases cited in the original opinion did not state the principle so broadly. However, California

cases not referred to there warrant the broader statement. See Yuba Mfg. Co. v. Stone, 1919, 39 Cal.App. 440, 179 P. 418; W. Ross Campbell Co. v. Sears, Roebuck & Co., 1934, 136 Cal.App. 765, 29 P.2d 910; Bank of America National Trust & Savings Ass'n v. Pendergrass, 1935, 4 Cal. 2d 258, 48 P.2d 659. Some confusion has arisen because, at times, the cases do not draw a distinction between attempts made to vary the terms of a written instrument *without charging fraud* and similar attempts to read inconsistent provisions into the written agreement *by charging fraud*. The cases just cited are all cases of the latter type. And, in them, the courts enunciate distinctly the principle that a promise inconsistent with the writing cannot be interpolated into it by calling it fraudulent, as a promise made without intention to perform. Thus, W. Ross Campbell Co. v. Sears, Roebuck & Co., 1934, 136 Cal. App. 765, 29 P.2d 910, at 912: "Plaintiff seeks to evade the result of its plain terms by proof of a parol, unperformed agreement which is directly contrary to such clear meaning. It is well settled that a fraudulent representation as to a material matter inducing the execution of an agreement may be shown by parol evidence, even where the written instrument purports to contain the entire agreement between the parties. Hunt v. L. M. Field, Inc., 202 Cal. 701, 703, 262 P. 730. *In our opinion, however, a distinction must be made between such a parol promise as the one here, which by its very nature is superseded by the final writing, inconsistent with it, and a promise made with no intention of performing the same, not inconsistent with the writing, but which was the inducing cause thereof. We think the former, being evidence of a preliminary agreement entirely superseded by the subsequent writing, is no evidence of the terms of the writing finally agreed upon* (section 1856, Code Civ.Proc.), *and cannot be relied upon as a fraudulent representation inducing the writing.*" (Italics added.)

Bank of America Nat. Trust & Savings Ass'n v. Pendergrass, supra, is the latest declaration of the Supreme Court of California on the subject.

There, as here, it was attempted to contradict a specific provision in a written contract,—an unconditional promise to pay money contained in a promissory note and mortgage by pleading, as fraud, a promise, allegedly made without intention to

perform, that no payment would be exacted during a particular year. The court held that the defense was not available because it was in *direct contradiction* of the unconditional promise contained in the writing, saying (page 661): *"This promise is in direct contravention of the unconditional promise contained in the note to pay the money on demand.* The question then is: Is such a promise the subject of parol proof for the purpose of establishing fraud as a defense to the action or by way of cancelling the note, assuming, of course, that it can be properly coupled with proof that it was made without any intention of performing it? Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that *it must tend to establish some independent·fact or representation, some fraud in the procurement of the instrument, or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing.* We find apt language in Towner v. Lucas' Ex'r, 54 Va.(13 Grat.) 705, 716, in which to express our conviction: 'It is reasoning in a circle, to argue that fraud is made out, when it is shown by oral testimony that the obligee cotemporaneously with the execution of a bond promised not to enforce it. Such a principle would nullify the rule: for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms, would always be guilty of fraud. The true question is, Was there any such agreement? And this can only be established by legitimate testimony. For reasons founded in wisdom and to prevent frauds and perjuries, the rules of the common law exclude such oral testimony of the alleged agreement; and as it cannot be proved by legal evidence, the agreement itself in legal contemplation cannot be regarded as existing in fact. Neither a court of law or of equity can act upon the hypothesis of fraud where there is no legal proof of it.' The rule referred to in the quotation has found expression in sections 1625 and 1698 of the Civil Code and section 1856 of the Code of Civil Procedure and, according to our authorities, is one not only of evidence but also of substantive law. Harding v. Robinson, 175 Cal. 534, 166 P. 808; Lindemann v. Coryell, 59 Cal.App. 788, 212 P. 47, 48. The last-cited case confirms the opinion we en-

tertain, for while it is said no question of fraud was raised, yet the effort was made to prove that the note was executed upon the understanding that the payee would not enforce payment until the payor had sold sufficient real property to enable him to pay. It was there said, after citing a pertinent section of Wigmore on Evidence, that fraud may not be established by parol evidence to contradict the terms of the writing 'when the statements relate to rights depending upon contracts yet to be made, to which the person complaining is a party, as under such circumstances he has it in his power to guard in advance against any and all consequences of a subsequent change of conduct by the person with whom he is dealing, and to admit evidence of extrinsic agreements would be to open the door to all evils that the parol evidence rule was designed to prevent.'" (Italics added.)

We have, therefore, a direct ruling by the Supreme Court of California which says that a representation antecedent to a written contract, even though fraudulent, is not actionable *if the subsequent contract covered specifically and in a divergent manner the subject matter of the representation.*

Counsel for the plaintiff have attacked this ruling. They insist that in some of the cases, to which the court referred in its opinion, no charge of fraud was involved. This is evident from the court's own language just quoted. But it is also indisputable that the court intended to apply that principle to fraud cases. However, even if we were inclined to quarrel with the Supreme Court of California, we would not be in a position to do so.

■ We are bound to accept its interpretation of the state law.

And certainly we cannot substitute our opinion for its interpretation or application of its own precedents. If, in so doing, harshness results in a particular case, we must bow to the rule, dura lex sed lex.

■ The license agreement under consideration covers specifically the eventuality of non-release or non-delivery by providing the right to substitute as to certain productions. The representation charged to have been made would turn, as pointed out in the prior opinion, an *optional* promise into an *absolute* promise, without the reserved right of choice or election, through substitution.

Under the principles discussed in the prior opinion and the additional authorities here cited, this cannot be done.

Plaintiff's attempt to state a cause of action must fail. And, as it is evident that no cause of action can be stated under the facts, the demurrer will be sustained without leave to amend, and the cause will stand dismissed. Like orders will be entered in the companion cases.

Exception to plaintiff.