[Civ. No. 6456.   Second Appellate District, Division One.—May 13, 1931.]

ISADORE WOLFSON et al., Respondents, v. OCEAN PARK REALTY CORPORATION (a Corporation), Appellant.

128

Schweitzer & Hutton for Appellant.

John F. Dahl and Louis L. Swarthe for Respondents.

YORK, J.—The appellant corporation, of which the individual defendants were officers and directors, was the owner of the Egyptian Ball Room at Ocean Park, and under date of December 26, 1926, said corporation leased said ballroom to the plaintiffs, who conducted same from that date until July 17, 1927, sustaining a loss of $11,348.59.

The complaint alleges that A. L. Gore, one of the individual defendants, in order to induce the plaintiffs to lease said ballroom, represented to plaintiff Burnett Wolfson that said ballroom "was a profitable going business;" that said ballroom had done an average weekly business sufficient to meet and defray all of the expenses incurred in the operation and upkeep thereof during the months of October, November, December, January, February and March of each year, and that during the month of April, the first two weeks of May and the last two weeks of September of each year, the ballroom had done an average business so as to show a net profit of approximately $500 a week; that during the months of June, July, August and the first two weeks of September and the last two weeks of May of each year, the said ballroom had done an average business of $2,500 per week.

The complaint also alleged that the plaintiffs discovered during the months of January and February, 1927, that the ballroom was operating at a loss and informed defendants of that fact, but that A. L. Gore for the purpose of deceiving plaintiffs represented that such loss was due to unfavorable weather conditions, and that said business had always shown a profit as soon as the weather conditions were favorable.

That on or about July 10, 1927, plaintiffs discovered that said ballroom, as operated by defendants prior to December 27, 1926, had been operated by said defendants at a loss and that at no time did said ballroom pay its expenses, and at no time did it show any profit; that said plaintiffs discovered that all of the statements and representations made by defendant A. L. Gore to plaintiff Burnett Wolfson were false and untrue in this, that said ballroom had never operated at a profit; that upon discovery of the fraud perpetrated upon them, to wit: July 10, 1927, plaintiffs tendered the premises back to defendants and demanded a return of the money lost by them in operating the ballroom during the period above mentioned. No question is raised by appellant concerning the amount or measure of damages given by the verdict.

The cause was tried before a jury, which returned a verdict in favor of plaintiffs against defendant corporation for the amount of the loss sustained by plaintiffs during

the period they operated the ballroom, or the sum of $11,-348.59.

Upon this appeal, appellant contends that the evidence is insufficient to justify the verdict in the following particulars:

First: That it indisputably appears that Wolfson was put on notice of the fraud alleged to have been worked upon him February 12, 1927, and by carrying on waived his right to claim fraud;

Second: Evidence clearly shows Wolfson had knowledge of previous earnings of ballroom;

Third: That nowhere does it appear that appellant was a party to any fraud;

Fourth: That Wolfson is estopped to claim reimbursement by his fraudulently obtaining from appellant a certain $4,600 loan;

That the verdict is against law;

That the record fails to show A. L. Gore the agent of appellant or authorized to make representations;

That the knowledge of some of the directors of a corporation if not disclosed to the board is not necessarily to be imputed to the corporation.

Appellant also takes exception to two instructions given to the jury, contending that the giving thereof by the court constituted prejudicial error.

We have scanned the record very carefully, and are convinced that there was ample evidence to support the verdict of the jury. As to the question of waiver by respondent Burnett Wolfson of his right to claim fraud, we are of the opinion that that was a matter to be determined by the jury, taking into consideration all of the circumstances of the case.

It was held in the case of *French* v. *Freeman*, 191 Cal. 579 [217 Pac. 515]: "The rule that a person who has discovered that he has been cheated in one particular is put on inquiry as to other possible frauds must be applied with reference to all the circumstances of the case, and is a question for the trial court to determine.

"In such an action, the question of waiver or nonwaiver of the fraud was one of fact for the trial court to pass upon, and the acts or conduct which defendant claims constituted such waiver were the evidence to be considered in

determining the ultimate fact of waiver or nonwaiver; and it cannot be said on appeal, as a matter of law, that plaintiff intended to and did waive the fraud complained of.''

There is no evidence in the record that shows that respondent ever had access to the books of the corporation until July, 1927, after which he immediately tendered the premises back to appellant. We are of the opinion that respondent Wolfson, being without access to these books, could not have acquired from that source any knowledge of the previous earnings of the ballroom.

There was also ample evidence to impute fraud to the corporation. All of the stock of the corporation was owned by A. L. Gore, Adolph Ramish, Mike Gore and George Cleveland, the individual defendants. The evidence shows that Mr. A. L. Gore conducted the negotiations with plaintiff Burnett Wolfson, whereby he and his brother were induced to lease the ballroom, and when plaintiff Burnett Wolfson appeared before a meeting of the board of directors of said corporation with reference to the lease, Mr. Ramish insisted that plaintiffs post a bond in order to insure the corporation against loss, at which time he made the following statements in the presence of the entire board of directors: ''the Egyptian Ballroom is a valuable property. . . . Well, why should we turn over a going and paying business without any security? We ought to have security here.'' While it cannot be said that the corporation authorized Gore directly to make the false representations, the evidence clearly shows that he was the representative of the appellant, that all of the other members of the board had knowledge that he was negotiating the lease, and that they were all present when Burnett Wolfson appeared before them for questioning as to his financial ability, at which time it was represented to him that the ballroom was a valuable property, and that it was a going and paying business. This evidence shows that the various members of the board of directors had enough knowledge to put them upon inquiry, at least to the extent of constituting the corporation a party to the fraud perpetrated by some of the members.

Upon referring to the record, we find that the loan of $4,600 made by appellant to the plaintiffs was not negotiated until July 20, 1927, subsequent to the date that plaintiffs surrendered possession of the ballroom, at which

time Burnett Wolfson gave his promissory note for this amount and upon which an action is now pending. We are unable to see how this could in any way estop the plaintiffs to claim reimbursement for the money lost in operating the ballroom through fraudulent acts of the appellant.

Appellant attacks the validity of the judgment rendered against it, maintaining that where the agent of a corporation is alleged to be a tort-feasor as such agent, and the corporation is sued jointly with him, on the theory of *respondeat superior*, if the agent be exonerated, then the corporation must be also. We cannot accede to this view. All of those concerned were officers and directors of the corporation and all participated in the events leading up to the leasing of the ballroom and its surrender by plaintiffs. "All intendments being in favor of the verdict, it must be considered that the jury based the same upon a finding of joint liability, unless there is something in the record which prevents that conclusion." (*Benson* v. *Southern Pac. Co.*, 177 Cal. 777, 780 [171 Pac. 948, 949].) There is nothing to prevent such a conclusion here.

We have read the instructions complained of, and are of the opinion that the giving of them did not in any way work prejudicially against the defendant.

The judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal June 10, 1931; and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 9, 1931.