[L. A. No. 11083. In Bank.—December 22, 1931.]

MAE MURRAY DIVANI, Respondent, v. JACK DONOVAN et al., Appellants.

W. Joseph Ford, John G. Ford and Patrick F. Kirby for Appellants.

David H. Cannon, Howell Purdue, W. I. Gilbert and Root, Bettin & Painter for Respondent.

SHENK, J.—This is an appeal from a judgment for the plaintiff in an action for damages resulting from the fraudulent representations of the defendants Donovan in the sale of real and personal property to the plaintiff.

The defendant Jeanette G. Donovan, the mother of the defendant Jack Donovan, was the record owner of a lot improved by a residence and garage known as 13047 San Vicente Boulevard, Los Angeles. On April 30, 1926, the plaintiff entered into a written contract with the defendant Jack Donovan to purchase this piece of property, including all furniture and furnishings, pipe-organ, etc., for the sum of $50,000. On May 3, 1926, the defendant Jeanette G. Donovan executed and delivered a deed to the premises. On May 11, 1926, the plaintiff and the defendant Jack Donovan entered into a written contract for the construction of an addition consisting of two bedrooms, dressing-room and bath for the sum of $6,000, which the plaintiff paid. The plaintiff assumed a mortgage, gave her note and trust deed for a portion of the purchase price, and made the installment payments under the contract, the details of which it is not necessary to recite. This appeal does not present for review the issues raised by the plaintiff respecting the note and mortgage involving the defendants other than the defendants Jack Donovan and Jeanette G. Donovan, since the plaintiff has not taken an appeal from the judgment against her on those issues. Therefore, reference herein to the defendants will include only the defendants Donovan, mother and son.

The first question for consideration is whether the findings favorable to the plaintiff on the issues of fraud are supported by the evidence. The undisputed events leading up to the purchase of the property by the plaintiff are briefly the following:

On the evening of April 28, 1926, at the instance of the Donovans, the plaintiff called at their home at 13047 San

Vicente Boulevard, making a visit of about one hour in duration. During this visit the defendants entertained the plaintiff with music and refreshments. The plaintiff expressed herself as charmed with the defendants' home and its furnishings and decorations, and at the invitation of the mother, was shown through the house and gardens. The defendants pointed out pieces which they stated were authentic antiques, some of them heirlooms, and very valuable, especially referring, among other articles, to an Empire bed, desk and chairs, also to a shrine in the patio which the plaintiff particularly admired and which was stated by the defendants to be an ancient shrine recovered from a church which had been torn down. During this visit it was suggested by Mrs. Donovan that she would like to see the plaintiff possess such a restful place as her home, to which the plaintiff demurred that the Donovans would not wish to sell their own home and furnishings, and to which Mrs. Donovan replied that in the plaintiff's case it would be different. The next morning the defendant Jack Donovan telephoned to the plaintiff and stated to her that they had a *bona fide* offer from a major to purchase the home, but that they wanted the plaintiff to consider it, and that if she wanted it she would have to make a quick decision. The plaintiff called again at the Donovan home that morning and stayed for about an hour. The defendants do not dispute, in fact they concede, that representations were made as hereinbefore stated respecting the furniture and furnishings, and also respecting the great skill and fame of the defendant Jack Donovan as an architect and builder, and that nothing but the very best of everything, materials and workmanship, had been put into the construction of the home, which had been built by Jack Donovan as a home for himself and his mother and not as a place to sell. The plaintiff testified: "I asked what price he held it at. He said $75,000, and I said I could not give that price, what other price did he have. And he said, well, seeing it's you, $50,000, and then we discussed how it would be paid, and I left the house that morning saying that I would take the house."

The contract signed on April 30th provided that certain changes in landscaping would be effected and that the defendant Jack Donovan would supervise the construction of the addition of two bedrooms, dressing-room, and bathroom

fitted with a Marathon shower, and the enlargement of the kitchen and laundry and servants' quarters over the garage. In this respect it is in evidence that the defendant Jack Donovan represented that such additions would be made at cost and that he himself would provide without charge his services in planning and supervising the construction of the wing and enlargements, which would be of the very best materials and workmanship to conform with the superior construction of the main building, and that the cost thereof would not exceed $3,000. The defendant Jack Donovan also represented that he would plant new shrubbery where it was wanted by the plaintiff, of the value of $1,000 to $1500, and install electrically controlled locks on two driveway gates. On May 11, 1926, Jack Donovan presented to the plaintiff for signature a contract providing $6,000 as the price of the new wing and enlargements. The construction was completed and the plaintiff took possession about July, 1926.

It would extend this discussion beyond reasonable limits to detail all of the evidence bearing upon the issue of the falsity of these representations and others which were found by the trial court to have been made. Suffice it to say that the evidence fully supports the finding of the trial court that the construction of the house was of poor and inferior quality and workmanship; that the hardwood floors were of such inferior grade and construction that they cupped and buckled; that the plaster fell off; that the exterior stucco fell off and the waters penetrated the cracked stucco to the sheathing which became rotted and warped; that the foundation became out of line; that the plumbing and wiring were defective; also that the cost of the additions and changes were not of the value of $6,000; that the new bath was not fitted with a Marathon shower nor with tiling as agreed; that the materials used in the construction of the additions were crude and of inferior quality and workmanship; that a porch in the servants' quarters over the garage was constructed in a flimsy manner, was unsafe and dangerous to use; that the premises were subject to overflow of storm waters which the defendants well knew and that no adequate drainage was provided. It is undisputed, and the court found, that certain articles in the house, including the Empire bed, chairs and other pieces,

and the shrine in the patio, had been removed, and that cheap and inferior substitutions had been made and put in their places, and that a desk, a harp and certain pictures had also been removed. It was also found and not disputed that the shrubbery promised had not been planted and that electrically controlled locks had not been installed on the driveway gates. Many details of inferior quality of materials and construction found by the trial court are not mentioned herein. The court found generally that all of the representations made were false and known by the defendants so to be, and made with the intent to wrong and defraud the plaintiff, and were relied upon by her. It was also in evidence that the market value of the lot at the time of the transaction was not more than $10,000 and that $10,000 was the market value of the improvements after the changes and additions had been made. A retailed appraisal of all of the furnishings and furniture, including the pipe-organ, received by the plaintiff, showed an aggregate value of $3,705. The court found damages in the sum of $32,295, which it is noted is the difference between the actual value as so proved and $56,000, the price paid by the plaintiff.

No contention is or can be made that the representations, if wilfully false and relied upon by the plaintiff to her damage, may not ground a recovery. (*French* v. *Freeman,* 191 Cal. 579, 585, 586 [217 Pac. 515]; *Herdan* v. *Hanson,* 182 Cal. 538, 546 [189 Pac. 440]; *Barron Estate Co.* v. *Woodruff Co.,* 163 Cal. 561, 573 [42 L. R. A. (N. S.) 125, 126 Pac. 351]; *Crandall* v. *Parks,* 152 Cal. 772, 776 [93 Pac. 1018]; 12 Cal. Jur. 725 et seq.)

No merit can be found in the contention that the evidence does not support the findings that the defendants made the representations and that they were knowingly false. The greater portion of the appellants' argument on this phase of the appeal is devoted to a discussion of the inferences that could be drawn from the evidence favorable to fair dealing on the part of the defendants; but such inferences depend for their existence upon the conflicting evidence or explanation introduced by the defendants and which the trial court had the right to reject and to make its findings accordingly. ▮ It is exclusively the function of the trial court to determine whether the evidence tend-

ing to prove fraud outweighs or preponderates the evidence of the defendants. (*Noll* v. *Baida*, 202 Cal. 98, 101 [259 Pac. 433].) The defendants' contention that the evidence supports only the conclusion that the plaintiff bought the house for its restful atmosphere and artistic effect and without any reliance on the representations made as to the construction, etc., is equally without merit. ■ The plaintiff testified that she did not make a more thorough inspection because she believed both Jack Donovan and his mother and had she not believed and relied upon their statements and representations, she would not have entered into the transaction. This was sufficient evidence of reliance. (*French* v. *Freeman*, *supra*, p. 586; *Desmond* v. *Standard Bond & Mtg. Co.*, 91 Cal. App. 201, 205 [266 Pac. 1005].)

■ The defendants offered no proof as to the actual market value of the property. They offered figures showing the original cost of the building and of the additions and the furniture, including organ and piano. They accept the plaintiff's evidence as to the value of the lot, and adding their own figures as to the original cost, they themselves show a value greatly below the price paid. The trial court, in measuring the damages, could have received proof based on the actual market value; and in the absence of proof other than that offered by the plaintiff, we cannot say that there is any merit in the defendants' contention that the court underestimated the actual value of the property purchased.

Two questions of law are raised by the defendants. First, that the trial court erred in overruling the demurrer to the complaint made on the grounds that several causes of action were improperly joined and not separately stated, and that there was a defect of parties defendant; and secondly that the court applied an erroneous measure of damages.

■ The defendants first contend that the plaintiff has joined without separately stating a cause of action to rescind, a cause of action for damages for fraudulent representations in the sale of real and personal property, an action for damages for breach of warranty of the quality of personal property, an action for damages for failure to perform a contract to build, and an action for the unlawful conversion of personal property. The answer to this con-

tention appears to be that the defendants have indicated the remedies which the plaintiff may have elected to pursue, but the fact that the plaintiff could have pursued different or other remedies does not preclude her from setting up the entire transaction and all of the representations claimed to be false and upon which she relies, in one cause of action to recover the damages suffered by her for the fraud of the defendants. This is the one and entire cause of action stated by the plaintiff and the only theory upon which she sought a recovery. ■ Neither is there any defect on the face of the complaint in joining the defendants Jack and Jeanette G. Donovan, since the complaint charged the making of the representations and the known falsity thereof against both defendants jointly, and if the agreements signed only by Jack Donovan and the deed signed by Jeanette G. Donovan might be said to indicate any such defect, no prejudice was suffered by the defendants in view of the proof and the finding of the court that the false representations were made ''by the defendant, Jack Donovan, acting in his own behalf and for and on behalf of the defendant, Jeanette G. Donovan, by her authority, and the defendant, Jeanette G. Donovan, acting in her own behalf and for and on behalf of the defendant, Jack Donovan, by his authority'', and the correctness of this finding is not disputed.

■ The other point to be considered is whether the court applied the correct measure of damages. In support of their contention that the court erred in this respect the defendants cite authorities which establish without question that the proper measure of damages to be applied is the difference between the actual value of the property purchased and the value it would have had, had the property been as represented. (*Spreckels* v. *Gorrill*, 152 Cal. 383 [92 Pac. 1011]; *Hines* v. *Brode*, 168 Cal. 507 [143 Pac. 729]; *Perry* v. *Ayers*, 159 Cal. 414 [114 Pac. 46]; *Hunter* v. *McKenzie*, 197 Cal. 176, 186 [239 Pac. 1090]; *George Cople Co.* v. *Hindes*, 34 Cal. App. 576, 580 [170 Pac. 155].) The defendants point out that there is no direct proof of what the value would have been had the property been as represented, and that the court, in awarding as damages the difference between the actual value as proved and the price paid for the property, applied a measure which is

not adopted as the correct measure under our law. The contention of the defendants apparently is that in the absence of any proof other than proof of the price paid, or the contract price, the plaintiff cannot recover. But the lack of merit in this contention is made apparent by a number of decisions in which it has been held that the contract price or the price paid is some evidence of value. (*Hines* v. *Brode,* 168 Cal. 507, 510 [143 Pac. 729].) In other words, it is some evidence of what the value would have been had the defendants' representations been true. The defendants have not called our attention to any objection on their part to the consideration by the trial court of the purchase price as evidence of what the premises would be worth as represented. It may be said therefore that the evidence of the purchase price in this case in the absence of any other evidence of what the value would have been had the representations been true, was sufficient upon which to base findings and judgment for the plaintiff. (*Burgess* v. *Felix,* 42 Okl. 193 [140 Pac. 1180]; *Reeser* v. *Hammond,* 122 Kan. 695 [253 Pac. 233]; *Cramer* v. *Overfield,* 115 Kan. 580 [223 Pac. 1100]; *Houghton* v. *Carpenter,* 40 Vt. 588, 595; *Long* v. *Davis,* 136 Iowa, 734 [114 N. W. 197].)

No sufficient ground for reversal is presented.

The judgment is affirmed.

Richards, J., Seawell, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.