[Civ. No. 7547. Second Appellate District, Division One.—June 16, 1932.]

F. O. BURCKHARDT, Appellant, v. HARRY WOODS et al., Respondents.

Edwin J. Miller for Appellant.

Arnold C. Lackenbach for Respondents.

HOUSER, J.—An action "for fraud—money demand" was brought by plaintiff in the lower court against each of the defendants therein named, to wit: Harry Woods, Grace Woods, Bingham T. Wilson and Wilson Farm Tool Corporation, a corporation. The last two named defendants answered the complaint. The demurrer to the complaint of

defendants Harry Woods and Grace Woods was by the court sustained. Thereupon an amended complaint was filed, to which the said defendants also demurred and which demurrer was likewise sustained. Identical proceedings continued until three separate amended complaints had been filed, as to each of which a demurrer by the same defendants was interposed and by the court sustained. The last of such demurrers was sustained "without leave to amend" the complaint. Thereafter, on application of plaintiff, the former order by which plaintiff was denied the right to amend his complaint was vacated, and at the same time the plaintiff was granted leave to amend his complaint. Thereupon a fourth amended complaint, followed by a fifth amended complaint, was filed by plaintiff, each of which met the same fate as did each of its predecessors; and on making the order by which the demurrer to the fifth amended complaint was sustained the lower court again denied to plaintiff the right to further amend his complaint. A judgment was then rendered by the court by which the action was dismissed and said defendants awarded their "costs of suit". Plaintiff's subsequent motion that said judgment be "set aside" and that plaintiff be permitted "to further amend the complaint" was denied by the court. Thereupon plaintiff appealed "from the judgment . . . sustaining the demurrer to the fifth amended complaint without leave to amend, and dismissing said action, . . . and from the order denying the motion to set aside said judgment and denying leave to file the said proposed sixth amended complaint, . . ."

The principal ground upon which the demurrer of Harry Woods and Grace Woods to the fifth amended complaint rested was that as to them said complaint failed to state a cause of action.

The fifth amended complaint, which purportedly was for "damages for fraud and false representations", was divided into three counts or causes of action. The first count thereof, after having made assumedly appropriate allegations with reference to the character, business, etc., of the defendant corporation, as well as to the relationship which each of the several individual defendants bore to the corporation, contained the allegation: "That on or about the first day of May, 1928, at the County of Los Angeles, Cali-

fornia, the defendants, Bingham T. Wilson, Harry Woods and Grace Woods, and said Wilson Farm Tool Corporation, a corporation, acting through its said officers and agents, corruptly confederated, agreed and conspired together to fraudulently induce the plaintiff to loan Five Thousand Dollars ($5,000.00) in cash to said corporation without security; the said corporation then and there being insolvent; and with such fraudulent intent to deceive and defraud the plaintiff, said individual defendants as individuals and as officers of the said corporation, and said corporation, through its president and vice-president, falsely and fraudulently represented to the plaintiff the following facts and representations, to-wit:'' that said corporation was then and for many months last past had been engaged in the manufacture and sale of the said farm tool known and designated as the swinging arm plow, for the cultivation of groves and other farm crops; that the defendants were experienced in the manufacture and sale thereof; that said plow was then being used by many citrus growers; that said growers had stated that said plow was satisfactory; that defendants stated that from their experience and knowledge they knew it to be a fact that orchards had been cultivated with said plow, and that the cultivation of said groves was less expensive than those cultivated with any other farm tool; that the cost of manufacturing was $45; the selling price $165; that there was a profit of $120 per plow; that said corporation then had on hand written requests from 1500 different farmers in southern California for the purchase of said tool; that the demand therefor was unlimited; that the tool had been used by hundreds of citrus growers with great success and satisfaction; that the defendants had never had any complaint from any purchasers or users thereof; that the defendants before that time had sold large numbers of said tools which were then in use, and that the farmers and growers demanded said tool in such large quantities that defendants could not manufacture the same fast enough to supply the demand; that said corporation was solvent and was doing, and had been doing, a profitable business; that it was free from debt; that the capital stock thereof was very valuable; that the 15,000 shares issued to the defendants were worth $50,000; that the corporation then had assets reasonably worth, and would sell for, $50,000; that

they had received an order from a certain dealer in Lindsay, California, for fifty plows to be delivered immediately; that defendants had on hand only eight of said plows; that for the purpose of deceiving the plaintiff, and in the presence of plaintiff, they loaded said (eight) plows on to trucks and shipped the same to Lindsay, California; that the corporation was in good financial condition; that its business was profitable; that its capital stock was of great value; that plaintiff was perfectly safe in loaning $5,000 to said corporation; that said corporation would repay the same within ninety days thereafter; and that the plaintiff would sustain no loss by reason of making said loan.

In effect, it was then alleged that the plaintiff, not knowing otherwise, believed and relied upon said representations and was induced thereby to lend and did lend to said corporation $5,000 in cash; that each and all of said representations were false, and known to the defendants, and each of them, to be false and fraudulent when they made the same; that the said representations were made for the purpose of deceiving and defrauding the plaintiff, and for the purpose of inducing him to lend said $5,000 without security, and for the purpose of defrauding him out of said money.

By its succeeding allegations, the complaint then proceeded to specifically deny the truth of each of the said several representations theretofore alleged to have been made by the defendants to plaintiff; which allegations were followed by the statement that, although demand had been made by plaintiff of the defendants that they pay to plaintiff the loss thus sustained by him, the said defendants had refused to do so ''and the same has been and now is wholly lost to the plaintiff by reason of said fraud''.

The second count incorporated therein the false representations theretofore alleged in the first count as hereinbefore set forth, and then charged that the defendants confederated, conspired and agreed together to cheat and defraud plaintiff out of $5,000 on the purchase of stock held by Harry Woods and Grace Woods in said corporation; that plaintiff accepted, believed and relied upon said false representations and purchased the said stock and afterward discovered that said stock was entirely worthless; that said corporation was insolvent; that each and all of the said

representations were false, and that by reason of the plaintiff having paid $5,000 on the purchase price of the capital stock of said corporation the same had become wholly lost to him and he had been damaged on that account in the sum of $5,000.

The third cause of action likewise adopted as its own the principal allegations of the first count as hereinbefore set forth, and then charged that the loan of the $5,000 to the corporation and the payment of the $5,000 to Harry Woods and Grace Woods for the said stock were each different parts of one and the same transaction; that each and all of the defendants participated in the fraud, the same as theretofore had been set forth in the first cause of action; that the plaintiff paid to the defendants $10,000 in cash by reason of said false and fraudulent representations; that the said stock was worthless; that the corporation had no credit; that, although demanded of them by plaintiff, the defendants failed and refused to return to plaintiff the said money or any part thereof; that plaintiff had been damaged in the sum of $10,000 actual damages; which was followed by a prayer for punitive damages in the further sum of $10,000.

Considering the effect of the several allegations which are set forth in the pleading of plaintiff, this court is unable to discover any such defect therein as should result in a declaration that the complaint fails to state a cause of action. From a consideration of the authorities generally, and especially those to which reference is made in 12 California Jurisprudence, page 800 et seq., it would appear that in all essential particulars the complaint substantially conforms to the legal requirements in an action for damages alleged to arise from the fraudulent acts of the defendants in the action. Nor, except in some particulars immediately herein to be noticed, do the respondents contend that said complaint is lacking in essential averments.

Specifically, first, the objection by respondents that "a majority of the representations therein alleged to have been made by defendants to the plaintiff were mere matters of opinion", is so clearly without merit that any discussion of the point would appear to be entirely unnecessary.

Secondly, the suggestion by respondents that the allegation in the complaint that defendants "corruptly confederated, agreed and conspired together to fraudulently

induce the plaintiff to loan $5,000 in cash to said corporation, without security", together with the allegation wherein in detail the false representations of the defendants are set forth, constituted but "mere statements of opinion and of desire or hope for the future . . . ", is likewise untenable. In view of the remaining allegations in the complaint, the statement therein contained with reference to a "conspiracy", as such, may be and should be treated as so much unnecessary matter.

In the case of *More* v. *Finger*, 128 Cal. 313, 319 [60 Pac. 933, 935], it is said:

"The complaint alleges that the plaintiff has been deprived of the note by the wrongful acts of the defendants, and that they entered into a conspiracy for that purpose, but the conspiracy thus alleged is not the gist of the action. The gist of the action is the injury done to the plaintiff by these wrongful acts, and this injury is actionable whether it is the result of a conspiracy or not. The averment of a conspiracy is immaterial, and could be proved without such averment, or, if averred, need not be proved. The plaintiff is entitled to relief for the injury from such of the defendants as she can show have united or cooperated in doing her the wrong. (*Herron* v. *Hughes*, 25 Cal. 556; *Hamilton* v. *Smith*, 39 Mich. 231; *Boston* v. *Simmons*, 150 Mass. 461 [15 Am. St. Rep. 230, 6 L. R. A. 629, 23 N. E. 210].)"

And in *Revert* v. *Hesse*, 184 Cal. 295, 301 [193 Pac. 943, 946], the same principle is stated as follows:

"It is a general and well-established principle of law that, where two or more persons are sued for a civil wrong, it is the civil wrong resulting in damage, and not the conspiracy, which constitutes the cause of action. (*Herron* v. *Hughes*, 25 Cal. 555; *Davitt* v. *Bakers' Union*, 124 Cal. 99 [56 Pac. 775]; *Dowdell* v. *Carpy*, 129 Cal. 168 [61 Pac. 948]; *Menner* v. *Slater*, 148 Cal. 284 [83 Pac. 35.) In such an action, the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tort-feasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity. (*Cohen* v. *Fisher*, 135 App. Div. 238, 120 N. Y. Supp. 546; *White* v. *White*, 132 Wis. 121 [111 N. W. 1116]; *Miller* v.

*John,* 208 Ill. 173 [70 N. E. 27].) A plaintiff is entitled to a joint recovery of damages against such defendants as he can show have united or cooperated in inflicting a wrong upon him. (*Herron* v. *Hughes, supra; More* v. *Finger,* 128 Cal. 313 [60 Pac. 933]; *Nevin* v. *Gary,* 12 Cal. App. 1 [106 Pac. 422].)''

To the same effect are *Mox Incorporated* v. *Woods,* 202 Cal. 675 [262 Pac. 302]; *McPhetridge* v. *Smith,* 101 Cal. App. 122, 139 [281 Pac. 419].

In *Blair* v. *Guarantee Title Co., Inc.,* 103 Cal. App. 260, 270 [284 Pac. 719, 723], the court said:

''Appellants argue that respondents have wholly failed to prove that a conspiracy existed between Cronin, Bellotti and Wright to obtain the deed from Mrs. Blair and defraud her of her equity in the Long Beach property. Conceding, for the sake of argument, that this claim is true, it does not defeat plaintiffs' action. It is wholly unnecessary to establish such a conspiracy, because the gist of the action is the *injury done to Mrs. Blair by the fraudulent and wrongful acts of Cronin, Wright and Bellotti, and this injury is actionable, whether it is the result of conspiracy or not.* The allegations of a conspiracy are immaterial and need not be proved. *Mrs. Blair is entitled to relief for the injury done her from such of the defendants as can be shown to have participated or co-operated in doing her the wrong.* (*More* v. *Finger,* 128 Cal. 319 [60 Pac. 933]; *Herron* v. *Hughes,* 25 Cal. 555; *Nevin* v. *Gary,* 12 Cal. App. 1 [106 Pac. 422]; *Revert* v. *Hesse,* 184 Cal. 295 [193 Pac. 943]; *Bowman* v. *Wohlke,* 166 Cal. 121 [Ann. Cas. 1915B, 1011, 135 Pac. 37]; 5 Cal. Jur. 528; *Mox Incorporated* v. *Woods,* 202 Cal. 675–678 [262 Pac. 302].)''

Neither is available to them the third general objection by respondents to the sufficiency of the complaint that it ''neither sets up according to its legal effect, nor *in haec verba* the terms of the agreement . . . '' In alleging as he has the situation of the respective parties to the transaction and in complete detail the false representations which were made to him by the defendants, plaintiff has so thoroughly notified the defendants of the nature and character of his accusations against them that any further specific allegations with reference to the precise arrangement which may or which may not have been agreed upon by the par-

ties would be but evidentiary of the facts which possibly may have surrounded or entered into the transaction, and which consequently were unnecessary of declaration by plaintiff in his complaint. If perchance, some modifying or controlling agreement in addition to that which is indicated in the complaint was actually entered into between the respective parties to the transaction, its existence and the terms thereof more properly constitute matters of defense to be set up by the defendants in their answer to the complaint, rather than matters of attack to be alleged by plaintiff in his complaint.

As a final objection to the sufficiency of the complaint, the respondents urge that, "although plaintiff entitled his action 'Damages for fraud and false representations', it is obvious that he is attempting to obtain a rescission of the contract", etc. In that connection, respondents cite various authorities relative to required legal conduct on the part of a person who desires to rescind a contract; also regarding the sufficiency of allegations of a complaint in an action of the character of that which would be necessary in such a situation. But even conceding as thoroughly sound the argument on the point presented by respondents, it does not follow that in the instant situation it should prevail. As is noted by respondents, on the face of its entitlement the action purports to be one to recover "*damages* for false and fraudulent representations". Nor does the prayer of the complaint contain even a suggestion that plaintiff seeks to have the "contract" rescinded. In no place in the complaint is the word "rescind", or any of its derivatives, used. Aside from the description of the parties defendant, and the allegations with reference to their alleged fraud, the complaint contains no allegations which are peculiarly or distinctively appropriate to an action for rescission. To all appearances respondents have "set up a straw man" and have proceeded to "knock him down". At any rate, as applied to the facts herein, this court is unable to appreciate the force of the argument with reference to the point under consideration.

In view of what hereinbefore has been stated with reference to the nature of the several causes of action set forth in the complaint, it necessarily follows that the ground of demurrer urged by the defendants to the com-

plaint to the effect that "several causes of action have been improperly united and not separately stated", is without support either in fact or in law. (Sec. 427, Code Civ. Proc.)

But it is contended that because certain alleged ambiguities, uncertainties and unintelligibilities exist as to specified allegations in the complaint, the demurrer was properly sustained. Of such character of objections the first two are that it cannot be ascertained whether Harry Woods was vice-president, or whether Grace Woods was a director, of the defendant corporation on the date when the alleged fraud was perpetrated. The third and the fourth respectively of such objections are that from the complaint it cannot be ascertained in what capacity said Harry Woods or said Grace Woods is or are respectively sued. Fifth, whether the action is against all the defendants as joint tort-feasors, or whether they are sued on their stockholders' liability. The sixth objection is that the complaint is ambiguous, etc., in that it does not appear therein "who the president and vice-president were at the time of the alleged fraudulent representations". And, finally, it is claimed that from the allegations of the complaint it cannot be determined "what fraudulent representations were made by the defendants".

In the situation here presented, manifestly it would be much too much to expect of this or any court that it consider and discuss *seriatim* each of such specifications. It may be that taken with reference to some single isolated paragraph or sentence appearing in the complaint, each of the several objections made by the defendants may literally have some merit; but when such objection is considered from a standpoint of what is contained in the entire pleading of the plaintiff, each and all of such objections become of small significance. For example, considering the fact that the defendant corporation was charged with having, through its officers, made the representations of which plaintiff complains, what final difference could it make who was president, or vice-president, or a director, of the corporation at such time? From a consideration of each of the specifications in question, it is clear that it is either of little or no materiality to the cause of action stated in the complaint, or that in fact it is groundless. All that is

required in stating the cause of action is that the facts relating thereto be stated in "ordinary and concise language". (Sec. 426, Code Civ. Proc.) On reading the complaint herein it clearly and unmistakably appears that a person of ordinary understanding would have no appreciable difficulty in fully comprehending each and every essential fact therein endeavored to be set forth. Certainly in the instant action no defendant who was represented by an able attorney could fail to be fully informed as to the exact nature of the cause of action as a whole, or as to the import of any necessary ultimate fact contained within the several allegations of the complaint. As a finality, likewise is it certain that in no imaginable conditions or circumstances could either of the defendants be in anywise deceived or misled in regard to what representations he was charged with having made to plaintiff, or as to what effect they had upon the latter; nor even as to what injury or damage was claimed to have resulted to plaintiff by reason thereof.

We conclude that, viewed in the light of modern statutes and decisions which relate to the effect which technical objections may have on pleadings generally, the complaint under consideration, although not to be commended as a model, was in substantial compliance with the requirements of the law.

It is therefore ordered that the "judgment . . . dismissing the action" be and it is reversed, with instructions to the trial court to overrule the demurrer to the fifth amended complaint.

Conrey, P. J., and York, J., concurred.