[Civ. No. 12905. First Dist., Div. Two. Apr. 3, 1946.]

MERCHANTS' ICE & COLD STORAGE CO. (a Corporation), Plaintiff and Respondent, v. GLOBE BREWING COMPANY (a Corporation) et al., Defendants; L. L. SOZZI, Appellant; A. J. SCAMPINI et al., Cross-Defendants and Respondents.

Charles Reagh for Appellant.

A. J. Scampini in pro. per., Joseph P. Lacey and J. A. Pardini for Respondents.

GOODELL, J.—This is an appeal from a judgment of dismissal entered after demurrers were sustained to appellant's second amended cross-complaint and appellant declined to amend.

Merchants' Ice & Cold Storage Co. filed suit against Globe Brewing Co., the appellant Sozzi, Pacific Empire Holdings,

Inc., Pacific Empire Corporation, A. J. Scampini and one M. Maffei for the foreclosure of a chattel mortgage. Appellant filed therein an answer and cross-complaint alleging fraud and joining as cross-defendants said ice company, said Maffei, and the respondents herein. After a demurrer of the ice company thereto was sustained appellant filed an amended cross-complaint. Thereafter the ice company dismissed its foreclosure complaint with prejudice. A motion was then made by the remaining cross-defendants to dismiss the amended cross-complaint for failure to state a cause of action, whereupon appellant filed his second amended cross-complaint, now before the court. The ice company filed an answer thereto without demurring. Separate demurrers thereto, filed by the cross-defendants Maffei, Scampini and the two Empire corporations, were sustained with leave to amend, but appellant declined to do so and the judgment was entered from which he appeals.

In his cross-complaint appellant alleges that the two Empire corporations own the stock of Merchants' Ice & Cold Storage Co., and completely dominate and control it, and that on February 10, 1936, Scampini, Maffei, and others entered into a conspiracy with the ice company and the two Empire corporations to induce appellant to invest large sums of money nominally in Globe Brewing Co. but actually for the benefit of the ice company and the other cross-defendants. It is alleged that pursuant thereto respondent Scampini, who was appellant's attorney, made the following representations to appellant: that Globe Brewing Co. was in involuntary bankruptcy; that $25,000 was required to effect a complete reorganization of that concern; that if appellant would advance $17,500, the ice company, which was one of Globe's creditors, would advance $7,500; that the assets of Globe were worth $300,000 and from $65,000 to $75,000 was required to clear up its liabilities; that Herbert Fleishhacker, Tom Walker, and Grace Bros., Inc., all were interested in purchasing the brewery; that despite receivership the brewery was operating at a profit and had in fact made $24,000 in one month; that Globe could easily be sold at a profit of $100,000 within thirty days if appellant could raise the sum asked. Appellant informed Scampini that he could raise $14,000 only, whereupon Scampini agreed personally to invest the remaining $3,500.

In specifying the falsity of the above representations, the cross-complaint alleges that it was true that Globe was in

bankruptcy and that the ice company was a creditor thereof, but that in every other particular the representations were false.

The cross-complaint alleges also that at the time of these representations Scampini was attorney for and an officer of the ice company and its subsidiary, Merchants' Ice Acceptance Corporation but that this fact was unknown to appellant and all the respondents joined in concealing it from him; that all the respondents knew the falsity of the representations made by Scampini and caused them to be made either with knowledge of their falsity or in reckless disregard of their truth or falsity, to induce appellant to invest his money in Globe.

Thereafter, on February 15, 1936, appellant entered into a written contract with the Acceptance Corporation. This contract, according to the cross-complaint, was prepared by Scampini and provided that his law firm should be retained by both the appellant and the Acceptance Corporation to effect the reorganization of Globe. Appellant alleges that between February 15 and March 30, 1936, in reliance on the representations, he turned over to the cross-defendants said $14,-000; that Globe was reorganized (prior to May 11, 1936) and appellant was made a vice-president thereof; that after 90 days had elapsed he inquired why the sale had not been consummated, and was informed by Scampini that during the delay in reorganization said Walker had become interested in the reorganization of another brewery, but that Grace Bros., Inc., were still investigating; Scampini represented that in the meantime Globe was earning a substantial profit. It is alleged that Globe in fact never operated at a profit after the reorganization.

Scampini thereafter informed appellant that further capital was required to continue the operation of the brewery, and accordingly appellant turned over to Globe 3050 shares of "Italo Pete" stock which he owned, to be used by it as collateral security for a loan from the Bank of America; Globe failed to repay this loan and the bank sold the appellant's stock for $17,000 and applied that amount to the obligation. The cross-defendants, it is alleged, agreed to repay this sum to appellant or to cause Globe to do so.

Thereafter, it is alleged, Scampini and Maffei informed appellant that it was necessary to secure still further working

capital to keep the brewery in operation until it could be sold as originally represented, and that appellant advanced approximately $28,051.19 between May 23, 1936, and November 5, 1937, as a loan to Globe in reliance on the representations previously made and in full faith and confidence in Scampini because he was appellant's lawyer and a "co-adventurer"; that the total sum turned over to the cross-defendants and to Globe by appellant in reliance on all these representations (including the stock which was lost to appellant) amount to $51,051.19, no part of which has been repaid; that the assets of Globe were distributed in bankruptcy but the liquidation left nothing for the creditors, and no part of the assets were distributed directly or indirectly to appellant.

Appellant alleges that he remained in ignorance of the falsity of the representations made by Scampini until June 16, 1938. On or about June 1, 1938, appellant engaged a firm of accountants to examine charges for refrigeration made against Globe by the ice company; the accountants on June 16, 1938, reported substantial overcharges and appellant requested Scampini to commence action against the ice company. Scampini replied that he could not do so because he had long been attorney for and a director of the ice company. Appellant alleges that he thereupon launched an investigation and learned the falsity of the representations. The demand was for said $51,051.19, and interest.

The three demurrers before the court set up the following grounds: that the cross-complaint fails to state a cause of action; that several causes of action are improperly united and not separately stated; that the pleading fails to set forth the written contract between appellant and Acceptance Corporation, and that the action is barred by the statute of limitations.

One of the representations in the case at bar was that the assets of Globe were worth $300,000, and it is alleged that their real value did not exceed one-tenth thereof. It was represented that between $65,000 and $75,000 would clear up the Globe's liability while the allegation is that in fact $119,540 was required to do so. It was represented that despite bankruptcy proceedings Globe was operating at a profit and had made a profit of $24,000 in a single month, while the allegation is that it was not operating at a profit, nor had it made $24,000, in one month nor any sum approximating that amount. These are but three of the representations, definitely

stated to have been made, and as definitely stated to have been false. It is not necessary to repeat the others, for one false representation if sufficiently pleaded would render the pleading invulnerable to general demurrer. (See *Klutts* v. *Rupley*, 58 Cal.App.2d 560 [137 P.2d 496].) Reliance upon the representations is pleaded; the fiduciary relationship is fully pleaded; the $14,000 first advanced, the loss of the 3,050 shares of ''Italo-Pete'' stock, and the further cash investment of $28,051.19 all are alleged, which sufficiently set up the appellant's damages.

Respondents have cited numerous fraud cases on general and well-settled propositions, but they do not convince us that the pleading in this case is insufficient. As was said in *Burckhardt* v. *Woods*, 124 Cal.App. 345, 350 [12 P.2d 482], (which has many features in common with the instant case), ''this court is unable to discover any such defect therein as should result in a declaration that the complaint fails to state a cause of action . . . it would appear that in all essential particulars the complaint substantially conforms to the legal requirements in an action for damages alleged to arise from the fraudulent acts of the defendants.'' It falls squarely within the familiar rules restated in the recent case of *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 422 [159 P.2d 958].

 Respondents depart from the four corners of the pleading and tell us in their brief that appellant, instead of being merely vice-president of Globe, was in fact its president and active manager ''and knew more about it than any of the cross-defendants.'' This might be readily established at the trial, but it is hardly necessary to repeat what was said in *Mox, Incorporated* v. *Woods*, 202 Cal. 675, 676 [262 P. 302], ''. . . we are merely to pass upon the sufficiency of the complaint as a pleading.''

Respondents also argue that appellant must have been put on his guard with respect to the representations, or some of them, much earlier than he alleges (*Nicolaisen* v. *Toffelmier*, 97 Cal.App. 342 [275 P. 823]). It may be that the evidence will show that such was the case, but we are confined to the allegations of the cross-complaint. The case last cited and its companions (found at 97 Cal.App. 329 and 339) were appeals after trials on the merits where, of course, all such matters as the plaintiff's negligence, knowledge and notice and

means of acquiring knowledge were before the court. In *French* v. *Freeman*, 191 Cal. 579, 589 [217 P. 515], a rescission case, it is said: "The rule that a person who has discovered that he has been cheated in one particular is put on inquiry as to other possible frauds must be applied with reference to all the circumstances of the case, and is, of course, a question for the trial court to determine." This rule was followed and applied in *Wolfson* v. *Ocean Park Realty Corp.*, 114 Cal.App. 127, 130 [299 P. 579]. When the respondents file their answers the plea of statute of limitations will still be available to them, and whether such plea is sustained will depend, of course, on what the evidence develops.

■ One of the grounds of special demurrer is that the appellant has united without separately stating them, a purported cause of action for damages for conspiracy with one for fraud and one for money had and received. Little time need be consumed respecting conspiracy. It is true appellant alleges that respondents and others *conspired* in the commission of the fraud, but it is definitely settled that "it is the civil wrong resulting in damage, and not the conspiracy; which constitutes the cause of action." (*Burckhardt* v. *Woods*, *supra*, at p. 351 and cases cited.)

■ With respect to the contention that the pleading discloses a case based either on express or implied contract: it is perfectly clear that appellant has pleaded a cause of action for damages based on fraud. While it is true that he could have sued in assumpsit on an implied contract to repay the money (*Firpo* v. *Pacific Mutual etc. Co.*, 80 Cal.App. 122 [251 P. 657]) he did not elect to do so. ■ Appellant has alleged several acts of fraud, but the rule is "that acts of fraud which are part of one entire scheme constitute but one cause of action" (1 Cal.Jur. 351, citing *Raynor* v. *Mintzer*, 67 Cal. 159, 163 [7 P. 431]). See, also, *De Leonis* v. *Walsh*, 140 Cal. 175 [73 P. 813], *Divani* v. *Donovan*, 214 Cal. 447, 453-4 [6 P.2d 247]; *Nevin* v. *Gary*, 12 Cal.App. 1, 4 [106 P. 422], *Finch* v. *McKee*, 18 Cal.App.2d 90, 93 [62 P.2d 1380]; *Heffernan* v. *Bennett*, 63 Cal.App.2d 178, 185 [146 P.2d 484]; *Conger* v. *White*, 69 Cal.App.2d 28, 41 [158 P.2d 415]. ■ The allegation that the respondents agreed to repay, or cause the Globe to repay, to appellant the sum for which his 3,050 shares were sold discloses one of the circumstances of the fraudulent transaction. It cannot be said that by this cross-complaint appellant seeks to recover in assumpsit on the basis of a contract

with the respondents for the repayment of that sum. The important allegation is that he was induced to lend the stock by the fraudulent representations of the respondents. Its loss is one of the elements of his damages. The allegation of a promise of repayment is but incidental.

In this case, as in *Burckhardt* v. *Woods, supra,* the cross-defendants sought by demurrer to compel the pleader to set out the contract entered into between appellant and the Acceptance Corporation. The demurrer says that it appears from the pleading ''that all of the negotiations and discussions alleged to have taken place . . . prior to February 10, 1936, or thereabouts, were merged into and gave rise to a written contract between the cross-complainant and Merchants Ice Acceptance Corporation relating to the proposed reorganization of Globe Brewing Company.'' The first answer to this is that *it does not appear from the pleading that any negotiations or discussions were merged in the written agreement.* The allegation is simply that such contract was made between the Acceptance Corporation and appellant; that it was drawn by respondent Scampini and provided as one of its terms that Scampini's law firm be retained by both parties to effect the proposed reorganization of Globe. The second answer is that the contract was with only one of the respondents and was not with Scampini or any of the others. It is alleged to have provided also for an extension of ninety days, but the cross-complaint does not pretend to allege that the subject matter of the contract was the representations theretofore made by Scampini or any one else, which formed the basis of this action. It appears rather that the contract had to do with the reorganization of the Globe. Thirdly, it was not necessary for appellant to plead what the nature of the proposed reorganization of Globe was to be, or any of the other matters mentioned in the demurrer, and therefore no uncertainty was created by such omission. Whatever the contract covered may be brought out by way of defense. In *Burckhardt* v. *Woods, supra,* the complaint recited that the plaintiff had been induced to lend $5,000 to a corporation. A general objection to the sufficiency of the complaint was raised by demurrer on the ground that it ''neither sets up according to its legal effect, nor *in haec verba* the terms of the agreement. . . .'' In rejecting this argument, the court said: ''In alleging as he has the situation of the respective parties

to the transaction and in complete detail the false representations which were made to him by the defendants, plaintiff has so thoroughly notified the defendants of the nature and character of his accusation against them that any further specific allegations with reference to the precise arrangement which may or which may not have been agreed upon by the parties would be but evidentiary of the facts which possibly may have surrounded or entered into the transaction, and which consequently were unnecessary of declaration by plaintiff in his complaint.'' There is no merit in the contention that the ruling can be supported on this ground.

The respondents by demurrer invoke the statute of limitations. (Code Civ. Proc., § 333; § 337; § 338, subd. 4; and § 339, subd. 1.) The cross-complaint was filed more than three years after February 15, 1936, but within three years after June 16, 1938, which was the date of discovery alleged by appellant. The application of the discovery provision of subdivision 4 of section 338 received exhaustive consideration in the recent Hobart case, *supra,* where the court said that the statute commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. The court quoted with approval the following language in *Tarke* v. *Bingham,* 123 Cal. 163 [55 P. 759] : ''Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. *The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission.* (Italics added.)'' In the Hobart case a prior inquiry would have disclosed the true state of the facts relied upon. The court concluded, however, that it could not hold, as a matter of law, that any of the circumstances known to the plaintiff should have put a reasonably prudent person on inquiry, stressing two factors : the fiduciary relationship which existed between the parties and the fact that the plaintiff's evidence disclosed certain factors that may have tended to discourage the making of an exhaustive independent investigation. A parallel situation is found in the instant case. Here the relationship of attorney and client existed between Scampini and the appellant and the cross-complaint alleged facts which

likewise tended to discourage independent investigation. Thus it is alleged that when the contract was prepared on February 15, 1936, Scampini advised the appellant that it was necessary to extend the reorganization of the brewery a period of ninety days because legal technicalities required a longer time than he had been led to believe it would take. When the appellant inquired why no sale had been effected after ninety days, Scampini advised him that Walker was delaying the deal because he had become interested in another brewery during the delay incident to the reorganization; that Grace Bros. were still investigating, and that in the meantime it would be necessary to operate the Globe. Appellant acquired knowledge of facts sufficient to put him upon inquiry in June, 1938, when Scampini advised him of his relationship with the ice company which, according to the allegations, was the first time appellant knew that Scampini had been an attorney and a director of the ice company for a long time. His consenting in the agreement that Scampini could act as attorney for the *Acceptance Corporation* in reorganization matters while acting as appellant's attorney, did not put him on notice that Scampini at that time already was an attorney and a director for the ice company and had been for some time. Following this information coming to him he at once started his investigation.

The judgment appealed from is reversed with directions to the trial court to overrule the demurrers.

Dooling, J., concurred.

NOURSE, P. J.—I concur in the judgment with reluctance. The unverified cross-complaint is manifestly sham, and if a motion to strike had been made it should have been granted. But since the appeal is on the demurrer we must assume that the statements of appellant's counsel are true though he was not willing to have his client verify them.

A petition for a rehearing was denied May 3, 1946, and the following opinion then rendered.

NOURSE, P. J.— In their petition for rehearing respondents argue for the first time that their demurrer was good because appellant's cross-complaint did not show that it arose out of the transaction sued on (Code Civ. Proc.,

838

§ 442). The record did not contain the original complaint and respondents now attempt to state its contents in their petition. When respondents dismissed, the only affirmative pleading remaining was the cross-complaint, and on appeal the sole ground of attack was that it did not allege fraud. It has been repeatedly held that a rehearing will not be granted for the purpose of considering a suggestion of error made for the first time in the petition (2 Cal.Jur. 790; [*Conner* v. *East Bay etc. Dist.*], 8 Cal.App.2d 613, 619 [47 P.2d 774, 48 P.2d 982]; [*Ocean Park etc. Corp.* v. *City of Santa Monica*], 40 Cal.App.2d 76, 87 [104 P.2d 668, 879]).

Rehearing denied.