**CITIZENS NATIONAL TRUST & SAVINGS
BANK OF LOS ANGELES v.
LONDONO et al.**

**DULIEN STEEL PRODUCTS, Inc., of CAL-
IFORNIA et al. v. LONDONO et al.**

**No. 12886.**

United States Court of Appeals
Ninth Circuit.

March 30, 1953.

Rehearing Denied June 24, 1953.

Preston, Thorgrimson & Horowitz, Charles Horowitz, Seattle, Washington, Joseph H. Dasteel, Beverly Hills, Cal., for appellant, Dulien Steel Products, Inc., a Washington Corp.

Thomas S. Bunn, Los Angeles, Cal., for appellee, J. B. Londono.

Before DENMAN, Chief Judge, and HEALY, Circuit Judge, and HARRISON, District Judge.

HARRISON, District Judge.

The appellants, Citizens National Trust & Savings Bank of Los Angeles, hereinafter referred to as the "Bank" and Dulien Steel Products, Inc., of California and Dulien Steel Products, Inc., referred to herein as the "Steel Co." seek to reverse judgments in favor of J. B. Londono, a citizen and resident of Colombia and referred to in this opinion as "Mr. Londono", in the aggregate sum of $236,355.51. The bank's liability was fixed at the sum of $120,312.88.

The judgment provided that upon satisfaction by the Steel Co. it would also be satisfied as against the Bank and in the event the Bank satisfied any part or all of the judgment against it, the Bank would be

subrogated to the extent of such payment to the rights of Mr. Londono against the Steel Co.

This litigation arose out of two separate transactions. The complaint in the trial court was in three counts. The first count is against the Steel Co. for alleged breach of warranty respecting the quality of the wire sold. The second count is against the Bank for breach of contract by payment to the Steel Co. of $214,000 without obtaining a bill of lading required by a letter of credit. The third count was disposed of by the trial court and is not involved in these appeals. The two separate causes of action were tried together without objection.

At the outset of the trial Mr. Londono offered parol evidence tending to prove over strenuous objections of the Bank and the Steel Co. the wire was warranted as to quality. The trial court overruled the objections to evidence that purported to establish the sale was by sample.

The admission of the parol evidence to vary or add to the terms of the written contract of sale presents the controlling question to be determined on these appeals. The agreement of sale presents the keystone of this litigation. If the parol evidence was not admissible, then the many assignments of error must fall by the wayside until they present proper justiciable controversies.

The contract of sale was in writing subscribed by the parties and upon its face purported to be a complete agreement covering the sale of "unused government surplus barbed wire, as purchased by the seller from Interior Department".

In overruling the objections of the Bank and of the Steel Co. to the admission of parol evidence the court engaged with counsel for the Steel Co. in the following colloquy:

"The Court: It is not plain because it is not plain what is meant by 'as purchased by seller from Interior Department'. When was it purchased, 40 years before? Five years before? Ten minutes before? How are you going to explain that unless you have it by oral conversations or evidence?

"Mr. Dasteel: That was the duty of the buyer to ascertain at the time. The buyer has a duty—

"The Court: And, moreover, the phrase, 'as purchased by seller from Interior Department', I realize what your contention is, you set them up in documents which have previously been filed, but I do not know—I will not say that I do not know—I will say this, that the document is not clear as to whether or not the condition of the wire as purchased is the same as at the time of the purchase, at the present time, and so on."

■■ In identifying the subject matter, parol evidence would properly be admitted to identify the portion of the wire, "as purchased by seller from Interior Department", sold to Londono. Londono at the most would be entitled to wire of no better quality than the best of the lot purchased from the Interior Department.

The trial court in this respect was correct. It admitted evidence, parol and physical, showing the quality of the wire agreed to be sold. However, the plaintiff was not satisfied to limit the evidence to a mere showing of the agreed quality. He proceeded to introduce parol evidence of fraudulent representations, which had the effect of adding to the written contract a warranty, as expressed by the court in its Findings V:

"* * * and that said contract in substance was that Dulien would sell and deliver to plaintiff and plaintiff would buy and receive from Dulien, for the total of $214,000.00, payable upon draft by Dulien against letter of credit to be established by plaintiff with said bank on or before July 27, 1946, at the price of $107.00 per ton f. o. b. steamer Los Angeles, 2,000 tons of good, non-rusty, merchantable barbed wire, 1,000 tons of which would be black and 1,000 tons galvanized, equal in quality and condition to the sample rolls shown and the sample cuttings given to plaintiff as herein stated, for export to and sale in South America by plaintiff, * * *".

It is apparent the court used parol evidence to rewrite the contract of sale for the parties. This is violative of the settled law of California. Inasmuch as the judgment against both appellants was predicated upon parol evidence contrary to section 1856 of the Code of Civil Procedure and section 1625 of the Civil Code of California, the court was in error in admitting parol evidence for purposes other than clarification of the terms of the agreement. If Londono had been defrauded his action would have been predicated on fraud, a tort, not upon a breach of warranty, an action on a contract. Dougherty v. California Kettleman Oil Royalties, 13 Cal.2d 174, 183, 88 P.2d 690, 694; Merchants' Ice & Cold Storage Co. v. Globe Brewing Co., 73 Cal.App.2d 828, 834, 167 P.2d 503, 507; Firpo v. Pacific Mutual Life Ins. Co., 80 Cal.App. 122, 251 P. 657; 1 Cal.Jur.2d p. 625; 37 C.J.S., Fraud, § 94, p. 393; 24 Am.Jur., Sec. 254, p. 85.

We think the case of Germain Fruit Co. v. J. K. Armsby Co., 153 Cal. 585, 595, 96 P. 319, 323 is controlling and binding upon this court inasmuch as the factual situation is very similar to the case at bar. It was therein stated:

"* * * To hold parties to diligence and care in reducing their negotiations to writing, and to hold the writing to be subject to attack only by specific allegations of fraud or mistake, appears to be the better rule, and is now supported by the weight of authority. Like the statute of frauds, this rule is founded upon long and convincing experience that written evidence is more certain and accurate than 'slippery memory.' So long as the rule is applied, the actual contract made can be preserved without fear of its being affected in its terms by the frailties of an interested human recollection. That sometimes the written contract does not include all the terms intended by reason of neglect or oversight, and injustice is thereby done in particular cases, does not justify the abandonment of. the rule. To construe it away is to destroy one of the greatest barriers against fraud and perjury. Without specially indicating the rulings to which this opinion is applicable, it is sufficient to say that the admission of testimony to show a sale by sample for the purpose of establishing an express warranty of quality of the apricots sold was error. The finding of such a warranty was without competent evidence to sustain it, and the case was tried on an erroneous theory inconsistent with the rule declared in Gardiner v. Mc-Donogh, supra. [147 Cal. 313, 81 P. 964]."

See also Yuba Mfg. Co. v. Stone, 39 Cal.App. 440, 179 P. 418; El Zarape Tortilla Factory v. Plant Food Corp., 90 Cal. App.2d 336, 203 P.2d 13.

Judgments appealed from are hereby reversed and the causes are remanded to the trial court for further proceedings consistent with the views herein expressed.

DENMAN, Chief Judge.

 I concur in Judge HARRISON'S opinion as to what it says concerning the appeal of the Steel Company. However, the appeal of the Bank from Mr. Londono's judgment against it is based upon entirely different grounds not considered in that opinion which require the reversal ordered.

On the appeal of the Bank from the judgment against it, it appears that Mr. Londono purchased from the Bank the following letter of credit to the Steel Co.:

"Citizens National Trust & Savings Bank of Los Angeles
"Dulien Steel Products Inc.
11601 So. Alameda Street
Los Angeles, California
Irrevocable Credit No. 3645
Los Angeles 54, California
July 27, 1946
"Gentlemen:
"We hereby authorize you to value on us for account of J. B. Londono, Los Angeles, California up to the aggregate amount of Two Hundred Fourteen Thousand (US$214,000.00) U.S. Dollars available by your drafts at sight for full invoice cost to be accompanied by the following documents:

"Full Set Clean On Board Ocean Bills Of Lading Made Out To Order, Blank Enclosed, Marked Freight Prepaid—
"Commercial Invoices—
Evidencing Shipment of: Two Thousand (2000) Tons Barbed Wire C.I.F. Los Angeles Harbor In One Shipment

"From: Honolulu T. H. To: Los Angeles Harbor

"All drafts drawn under this credit must bear the following clause: 'Drawn under Citizens National Trust & Savings Bank of Los Angeles L/C No. 3645' and all amounts so drawn must be endorsed on the back hereof.

"We hereby agree with the drawers, endorsers and bona fide holders of drafts drawn under and in compliance with the terms of this credit, that such drafts will be duly honored on due presentation to the drawee if negotiated on or before July 31, 1946.

"Yours very truly,
/s/ Wm. H. Schroeder
Wm. H. Schroeder, Vice President & Mgr.
/s/ W. Glenn Powers
W. Glenn Powers, Pro-Manager"

For this letter of credit Mr. Londono paid the Bank $160,000 on July 27, 1946, when he received it and on July 29 gave his promissory note of $54,535, of which the $535 was added as the Bank's charge for issuing the letter. The letter required the delivery of a particular kind of bill of lading. It was to be an "on board" bill, not one issued when the wire had not been loaded. It was to be for 2,000 tons. It was to be "made out to order, blank endorsed."

The evidence shows that no *"on board"* bills of lading ever were issued on the 2,000 tons referred to in Londono's contract with the Bank. The only bills in evidence state the goods are "received for shipment * * * to be transported," etc. Further, the evidence shows that no bill of lading of any kind was issued for 2,000 tons of cargo. Further, it appears that no negotiable bill of lading "made out to order and blank endorsed" was issued for the wire agreed to be sold to Mr. Londono, but that the bill for that wire was an unnegotiable bill issued to the Steel Co. as consignee.

It is thus obvious that the major provision of the letter of credit, the delivery of the described bill of lading, was impossible of performance and the letter nudum pactum as between the Bank and the Steel Co. Also, the letter was no consideration for Mr. Londono's payment to and his promissory note given the Bank. Yet the Bank paid the Steel Co. its $214,000 by its cashier's check without receiving any bill of lading and has not brought any cross action against the Steel Co. for the recovery of the $214,000 on the ground of total absence of consideration or mutual mistake.

Nor has Mr. Londono sued the Bank to recover the $160,000 and the return of his promissory note on the ground of total absence of consideration or mutual mistake. Instead, the case was tried and decided below and argued here on the erroneous theory that Mr. Londono had given the Bank $214,000 of *his* money to hold in trust and be paid over to the Steel Co. for the bill of lading which had been wrongfully given to the Steel Co. without obtaining the bill. The findings of the district court, at page 139, state of the purchase of the wire that it was "wire for which *plaintiff's* money had been paid by the bank to Dulien," and Mr. Londono's brief in reply to the Bank's, at page 7, argues here that the Bank paid Dulien "Londono's money."

Mr. Londono and the court below apparently had the erroneous impression held by some bank depositors that they "have money in the bank." Instead, of course, they have no more than the bank's implied promise that it will pay them amounts equal to the deposits. So here the $160,000 and the promissory note for $54,535. secured from the Bank no more than the Bank's promise to pay $214,000 of *its* money to the Steel Co. upon delivery of the described bill of lading. It in no way affected Mr. Londono

that the Bank made *its* erroneous use of its own money in paying it out without receiving that bill of lading.

Not only does Mr. Londono's complaint fail to allege any act of the Bank which proximately caused any damage to Mr. Londono, but the case was tried and decided below on grounds which make irrelevant any question concerning the bill of lading or any act of the Bank. Mr. Londono's basic contention below and in his same brief here at page 46 is that the court properly found (Tr. 152) "that 'at no time was there an acceptance of the wire' by Mr. Londono and 'that he rejected all of it'."

The judgment in favor of Mr. Londono and against the Bank is reversed and the district court ordered to take further proceedings on its present record in accord with the views on that judgment here expressed.

HEALY, Circuit Judge (concurring).

I am in agreement with the opinion of Judge HARRISON. I agree also with the opinion of Judge DENMAN relating to the issue as between Londono and the Citizens National Bank.